# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00258-CV

**Barbara Apodaca, Individually and on behalf of the Estate of Claudia J. McAulay,
Appellant**

**v.**

**Dr. Penni Russo,
Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-05-003937, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## O P I N I O N

This interlocutory appeal arises from a healthcare liability claim filed by appellant Barbara Apodaca, individually and on behalf of the estate of Claudia J. McAulay, against Penni Russo, M.D. The issue is whether Apodaca's expert report sufficiently meets the requirements of section 74.351 of the civil practice and remedies code so as to allow her to receive an extension of time. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(c) (West Supp. 2006). Apodaca contends that the district court erred by granting Dr. Russo's motion to dismiss the lawsuit without first granting Apodaca an extension of time to cure her expert report's deficiencies. *See id.* § 74.351(c). Because the district court did not abuse its discretion in granting Dr. Russo's motion to dismiss and denying an extension of time to file an additional report, we affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

After she was involved in a serious automobile accident on October 22, 2003, in which she sustained trauma to her head and multiple orthopedic injuries, Claudia McAulay was admitted to Brackenridge Hospital. From October 24 to October 27, she was under the care of Dr. Thomas Coopwood, an internal medicine physician, and others. During the course of her treatment, according to her expert's report, Ms. McAulay was transferred from Brackenridge Hospital Emergency Department to Healthsouth Rehabilitation Hospital, and then transferred back to Brackenridge Hospital for an evaluation of her altered mental state and a urinary tract infection.

Dr. Penni Russo is a licensed physician who specializes in general surgery. At some point, Russo evaluated Ms. McAulay for an inferior vena cava (IVC) filter, which allows intravenous access to prevent a blood clot from causing a pulmonary embolism or stroke. No IVC filter was inserted. On October 29, Ms. McAulay had a cardiopulmonary arrest, and health care providers were unable to resuscitate her. The certificate of death showed that the cause of death was pulmonary embolism.

As a representative of the estate, appellant filed suit on October 31, 2005, alleging that Dr. Russo negligently failed to timely implement precautions against "pulmonary emboli, and anti-coagulant therapy."[1] On February 17, 2006, appellant filed the expert report and curriculum vitae of Dr. Leslie S. Zun pursuant to section 74.351 of the civil practice and remedies code. *See id*.

---

[1] At the hearing, Dr. Russo's attorney argued that Dr. Russo's "sole involvement with this patient was on the 28th when she got called by a nurse to come and evaluate the patient for an IVC filter."

§ 74.351(a). Appellant provided no other report[2] before the expiration of the expert report deadline.[3] Dr. Russo filed a motion to dismiss under section 74.351(b), asserting that appellant had failed to file an expert report addressing the care and treatment provided by Dr. Russo. *See id.* § 74.351(b). The district court granted the motion to dismiss, finding that appellant had failed to provide a proper expert report and further that she was not entitled to an extension of time to cure the report's inadequacies. *See id.* § 74.351(c). This interlocutory appeal followed.

## ANALYSIS

In her single issue on appeal, Apodaca argues that dismissal was improper and that she is entitled to an extension of time to file an expert report. Appellant urges that the district court erred in not granting an extension of time to file an expert report to cure any deficiency in her expert's first report. Dr. Russo responds that because the report fails to mention her name or address any care she provided to the patient, the report is "no report" as to her and appellant is not entitled to an extension.

We review a trial court's ruling on a motion to dismiss under section 74.351(b) for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001). A trial court abuses its discretion if it acts in an arbitrary or unreasonable

---

[2] Although Dr. Zun provided a second report dated March 22, 2006, which is included in the appendix to appellant's brief, the report was not before the trial court at the time of the hearing, the trial court did not grant leave for appellant to file the second report, and it is not a part of the record on appeal. *See* Tex. R. App. P. 34.

[3] Section 74.351(a) required Apodaca to file expert reports within 120 days of filing her original petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (West Supp. 2006). Thus, Apodaca's deadline to file expert reports was February 28, 2006.

manner or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for that of the trial court. *Walker v. Gutierrez*, 111 S.W.3d 56, 63 (Tex. 2003).

***The expert report requirement***

In a health-care liability claim, the claimant must provide each defendant with one or more expert reports, including a curriculum vitae for each expert, within 120 days of filing the original petition. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a). An "expert report" is:

> a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

*Id*. § 74.351(r)(6). Failure to serve an adequate expert report mandates dismissal with prejudice. *Id*. § 74.351(b). A report need not marshal all of the plaintiff's proof, but it must include the expert's opinion on each of the elements identified in the statute. *Palacios*, 46 S.W.3d at 878. To constitute a good faith effort, the report must inform the defendant of the specific conduct called into question and provide a basis for the trial court to determine that the claims have merit. *Id*. at 879. A report does not fulfill these purposes if it fails to address the standard of care, breach of the standard, and causation, or if it only states the expert's conclusions regarding these elements. *Id*.

The supreme court has stated that "to avoid dismissal, a plaintiff need not present evidence in the report as if it were actually litigating the merits. The report can be informal in that

4

the information in the report does not have to meet the same requirements as the evidence offered in a summary-judgment proceeding or at trial." *Id*. The expert report is not required to prove the defendant's liability, but rather to provide notice of what conduct forms the basis for the plaintiff's complaints. *Longino v. Crosswhite ex rel. Crosswhite*, 183 S.W.3d 913, 916 (Tex. App.—Texarkana 2006, no pet.).

### Dr. Zun's report

To comply with the expert report requirement, appellant served Dr. Russo with a two-page report from Dr. Zun setting forth the medical care Ms. McAulay received. It does not mention Russo's name; it identifies another physician and otherwise fails to specify the identity of any other health care provider involved in Ms. McAulay's treatment. After recounting the patient's initial treatment by Dr. Thomas Coopwood and her return to Brackenridge Hospital on October 28 for evaluation, the report observed:

> The physician order sheet of 10/28/03 at 1350 states to stop the lovenox. In the same order sheet dated 10/28/03, an order to place a temporary IVC filter was to be placed today. Patient was noted to be restless and agitated the night of 10/28/03. On 10/28/03, the internal medicine consultant assessment stated, "the patient much less responsive that records report and there was a concern about delirium from alcoholism, head trauma". His evaluation included STAT CT scan of the head, holding narcotics and monitoring for worsening symptoms. In this same report, the internal medicine consultant recommended that stopping the heparin was not a good option. It was recommended that the patient receive an immediate IVC filter. The medication administration record for 10/29/03 at 9am did not document any medication for DVT prophylaxis. On 10/29/03 at 9:30am, the patient had a cardiopulmonary arrest. Resuscitation was attempted but the patient did not survive.

> Deep venous thrombosis (DVT) prophylaxis as per Dr. Coopwood's note was aspirin and plexipulse foot pump. The medication administration report from Brackenridge Hospital did not note any heparin or lovenox being given to the patient from 10/23-

5

10/27. The patient was discharged to Healthsouth Rehabilitation hospital on lovenox.

After noting that the lovenox was discontinued on October 28 and the medication administration report stated that stopping the heparin was "not a good option for DVT prophylaxis and recommended that the patient get an IVC filter," Dr. Zun's report observed that "[a] note in the chart stated that an IVC filter was to be placed and an order to hold the IVC filter was noted on 10/28/03."

The report then specified "the deviations from the standard of care":

(1) Lack of treatment for DVT prophylaxis
Deep venous thrombosis prevention was not properly addressed. It is essential that prophylaxis for DVTs be given to patients in order to prevent pulmonary embolism and death. Heparin or low molecular weight heparins are indication for prevention of DVT. Based on the medical record, it is unclear whether the patient received heparin or lovenox during all of the days of all the hospital stays to prevent DVT. Asprin [sic] is not considered adequate prophylaxis for DVT. If there was a concern about heparin induced thrombocytopenia, lepirudin (Refludan) is the drug of choice for these patients. There was no finding that this medication was ever considered or given by the physicians carrying [sic] for the patient.

(2) Lack of IVC filter insertion
The other option for DVT prophylaxis is the insertion of an IVC filter. Until IVC filters are placed some other form of DVT prophylaxis needs to be initiated. In this case, the IVC filter was not placed in a timely fashion nor was the patient given DVT prophylaxis until the filter was placed. It is uncertain why the IVC filter was ordered and then cancelled.

(3) Inadequate evaluation of the patient's altered mental status
The patient's altered mental status was not properly addressed. One of the likely causes for altered mental status and agitation is pulmonary embolism. Evaluation of altered mental status in this patient focused around medications and head trauma. The appropriate evaluation would have included assessment of the respiratory status including pulse oximetry, blood gas analysis, and chest radiograph. If the patient's altered mental status was properly evaluated, the pulmonary embolism would have been discovered prior to cardiac arrest. Appropriate treatment for pulmonary

6

embolism could have started prior to the fatal embolism and thereby prevented the patient's demise.

(4) The patient's respiratory status was not adequately monitored
The patient's pulmonary status was not properly addressed. Pulse determinations are one means to determine whether a patient has pulmonary problems. Low pulse oxygenation readings in a post surgical, post trauma patient would necessitate that the patient be evaluated for pulmonary embolism. Identification of pulmonary problem from pulmonary embolisms would have prompted immediate treatment that would have saved her life.

Zun concluded that "[e]ach of these four deviations from the standard of care, alone or in combination, could have prevented the death of Ms. McAuley's."

In considering whether an expert report represents an objective good faith effort, the supreme court has established that a trial court is limited to a review of the report itself:

> The issue for the trial court is whether "the report" represents a good-faith effort to comply with the statutory definition of an expert report. [former Tex. Rev. Civ. Stat. Ann. art. 4590i] § 13.01(*l*). That definition requires, as to each defendant, a fair summary of the expert's opinions about the applicable standard of care, the manner in which the care failed to meet that standard, and the causal relationship between that failure and the claimed injury. *Id.* § 13.01(r)(6). Because the statute focuses on what the report discusses, the only information relevant to the inquiry is within the four corners of the document.

*Palacios*, 46 S.W.3d at 878; *see also Horizon/CMS Healthcare Corp. v. Fischer*, 111 S.W.3d 67, 68 (Tex. 2003). The only information, then, relevant to whether a report represents a good faith effort to comply with the statutory requirements is the report itself. *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002). We must, therefore, consider whether the information within the four corners of the expert report demonstrates a good faith effort to comply with the statutory requirements.

7

Section 74.351(r)(6) requires that an expert report explain how the care *rendered by the physician* failed to meet the applicable standard of care and the causal relationship between that failure and the injury suffered by the claimant. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *Palacios*, 46 S.W.3d at 878.

Although appellant has sued only Dr. Russo, other doctors and health-care providers are implicated by the facts set forth in the report. The report references other providers as well as their conduct and refers to another doctor by name, but fails to mention Dr. Russo at all. The report does not discuss how the care rendered by Dr. Russo failed to meet the applicable standard of care or how Dr. Russo's failure caused Ms. McAulay to suffer injury, harm or damages. Thus, the report did not inform Dr. Russo of the specific conduct she allegedly performed that forms the basis of the petition.

If a report fails to address the defendant physician, it constitutes no report as to that defendant, and the trial court may not grant a 30-day extension. *Garcia v. Marichalar*, 185 S.W.3d 70, 74 (Tex. App.—San Antonio 2005, no pet.). The question is whether the trial court abused its discretion in determining that the report failed to provide Dr. Russo a proper expert report and that it constituted "no report" so as to preclude an extension of time to cure any deficiency. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a)-(c).

In support of her contention that Apodaca's report did not satisfy the statutory requirements so as to allow an extension of time to cure any deficiency, Dr. Russo relies upon *Garcia*, 185 S.W.3d 70. In *Garcia*, the plaintiff filed suit against three doctors, two nurses, and a hospital. *Garcia v. Marichalar*, 198 S.W.3d 250, 252 (Tex. App.—San Antonio 2006, no pet.)

8

(later proceeding). The plaintiff served two expert reports, but neither report mentioned Dr. Garcia. *Id*. The court concluded that the trial court had no authority to grant an extension because the report was not merely deficient, but constituted no report as to Dr. Garcia. *Garcia*, 185 S.W.3d at 74. The court further held that "neither report informed Dr. Garcia of the specific conduct he allegedly performed that [the plaintiff] had called into question," and, thus, the expert reports did not constitute a good faith effort to comply with the statutory requirements. *Garcia*, 198 S.W.3d at 255.

As in *Garcia*, in this case, the report refers to the conduct and care provided by several providers. But unlike *Garcia*, in this case, appellant has filed a lawsuit complaining of the actions of only one doctor, Dr. Russo. Appellant seeks to distinguish *Garcia* because she has sued only Dr. Russo. In *Garcia*, the plaintiffs made a similar argument, claiming that the report applied to Dr. Garcia because he was involved in the single incident made the basis of that suit. *Id.* at 254-55. The court concluded that the report must identify the physician's specific conduct, as well as the causal relationship to represent a good faith effort to comply with section 74.351. *See id.* The report does not satisfy section 74.351(a) for a specific defendant merely because he or she is a defendant; the report must specifically identify the defendant and apply the statutory elements to that defendant. *See Jernigan v. Langley*, 195 S.W.3d 91, 93-94 (Tex. 2006) (affirming a dismissal under the prior statute, Tex. Rev. Civ. Stat. Ann. art. 4590i, § 13.03, because although the report made passing mention of Dr. Jernigan, it failed to state how he breached the standard of care or how his alleged breach caused injury); *Longino*, 183 S.W.3d at 917-18 (finding that the expert report did not represent a good faith effort because it failed to differentiate between Dr. Longino and another physician, and reversing the trial court's denial of Dr. Longino's motion to dismiss).

9

After reviewing the report in its entirety, we cannot conclude that the trial court abused its discretion in determining that the report fails to represent a good faith effort to address the conduct of Dr. Russo and constitutes no report as to Dr. Russo.

**CONCLUSION**

Because we conclude that the district court did not abuse its discretion in finding that the report did not constitute a good faith effort to comply with the statutory requirements and therefore constitutes "no report" as to Dr. Russo, we affirm the district court's order.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   May 2, 2007

10