# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00037-CV

**Mark D. Bogar, M.D., Appellant**

**v.**

**Dolores G. Esparza, Individually and as Administrator of the Estate of
Katherine G. Guerrero; Deceased; Fernando Guerrero; Sofia G. Butschy;
Gilberto Guerrero; Antonio Guerrero; Rosie G. Garza; Benito Guerrero;
Josey G. Selvera; and Frances G. Faz, Appellees**

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY, NO. 82,917-A, HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## O P I N I O N

We again address issues arising from the expert report requirements of section 74.351 of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West Supp. 2006). Appellant Mark D. Bogar, M. D. appeals the probate court's denial of his motion to dismiss appellees' health care liability claim for failure to make an objective, good faith effort to timely serve an expert report that complies with subsections 74.351(a) and (r)(6). The three issues presented here concern: (1) our subject matter jurisdiction over Dr. Bogar's interlocutory appeal; (2) whether the report appellees served complied with section 74.351's requirements; and, if not, (3) the appropriate appellate remedy. We conclude that we have jurisdiction over Dr. Bogar's interlocutory appeal and that the controlling law and "four corners" of appellees' report leave us no alternative but to reverse and render judgment dismissing appellees' claim and awarding attorney's

fees and costs. *See id.* § 74.351(b). We remand to the probate court to determine the amount of attorney's fees to which Dr. Bogar is entitled. *See Garcia v. Marichalar*, 198 S.W.3d 250, 255 (Tex. App.—San Antonio 2006, no pet.); *Pro Path Servs., L.L.P. v. Koch*, 192 S.W.3d 667, 672 (Tex. App.—Dallas 2006, pet. denied)*.*

## BACKGROUND

Appellees sued Dr. Bogar and Healthsouth on May 1, 2006, alleging negligence in connection with medical care provided to Katherine R. Guerrero by Dr. Bogar and the "agents, servants, employees, representatives, and staff" of Healthsouth Rehabilitation Hospital of Austin between December 28, 2004, and January 12, 2005, when Ms. Guerrero died. Appellees alleged that following surgery, Ms. Guerrero was placed under the care of Dr. Bogar and Healthsouth and, in the course of her rehabilitative treatment, was given a fatal overdose of pharmaceutical products. Appellees pleaded that an autopsy report from the Travis County Medical Examiner concluded that Ms. Guerrero "died as a result of an overdose of oxycodone and propoxyphene."

On or around June 6, 2006, Appellees served on Dr. Bogar and Healthsouth an expert report prepared by Dr. Jesse Adame that purported to comply with the requirement of subsection 74.351(a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) ("In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports . . . for each physician or health care provider against whom a liability claim is asserted."). Both defendants timely filed objections to the sufficiency of Dr. Adame's report. *See id.* ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than

2

the 21st day after the date it was served, failing which all objections are waived."). Each defendant contended that Dr. Adame's report failed to satisfy the statutory definition of an "expert report" by failing to provide a fair summary of the expert's opinions regarding applicable standards of care, the manner in which the care rendered by each defendant failed to meet the standards, and the causal relationship between such failure and Ms. Guerrero's death. *See id.* § 74.351(a), (*l*), (r)(6). Further, Dr. Bogar urged that Dr. Adame, a pathologist, had failed to demonstrate that he was an "expert" qualified to render opinions concerning the standards of care applicable to Dr. Bogar, a physical medicine rehabilitation physician. *See id.* § 74.351(r)(5), §74.401 (West 2005).

Subsequently, after appellees' 120-day deadline for serving their expert reports expired, *see id.* § 74.351(a), Dr. Bogar and Healthsouth filed a joint motion seeking dismissal with prejudice, attorney's fees and costs for failure to file an expert report complying with section 74.351. *See id.* § 74.351(b). Dr. Bogar later filed an amended motion to dismiss adding his earlier challenge to Dr. Adame's qualifications. On January 10, 2007, the probate court denied the dismissal motions.

Both Dr. Bogar and Healthsouth timely filed notices of interlocutory appeal. In the interim, Healthsouth settled with appellees. We accordingly address only the appellate issues presented by Dr. Bogar.

## ANALYSIS

In a single issue, Dr. Bogar argues that the probate court abused its discretion in denying his motion to dismiss and request for attorney's fees and costs. In addition to disputing the merits of this contention, appellees have filed a motion to dismiss Dr. Bogar's interlocutory

3

appeal for want of jurisdiction, contending that no statute authorizes him to appeal the order he seeks to challenge.

**Jurisdiction**

Appellate courts generally have subject matter jurisdiction only over appeals from final judgments and have jurisdiction over appeals of interlocutory orders only when that authority is explicitly granted by statute. *Academy of Oriental Med., L.L.C. v. Andra*, 173 S.W.3d 184, 185 (Tex. App.—Austin 2005, no pet.) (citing *Stary v. DeBord*, 967 S.W.2d 352, 352-53 (Tex. 1998)). Section 51.014(a) of the civil practice and remedies code authorizes an interlocutory appeal from two types of orders regarding expert reports under chapter 74. First, an interlocutory appeal may be taken from an order that "denies all or part of the relief sought by a motion under Section 74.351(b), except that an appeal may not be taken from an order granting an extension under Section 74.351(c)." Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(9) (West Supp. 2006). Second, an interlocutory appeal may be taken from an order that "grants relief sought by a motion under Section 74.351(*l*)." *Id.* § 51.014(a)(10).

Appellees assert that the order from which Dr. Bogar seeks to appeal is neither of these. They suggest that "the relief sought by a motion under Section 74.351(b)" is available only where a claimant has failed to timely file an instrument purporting to be an "expert report" by the 120-day deadline of subsection (a), not when a purported "expert report" is timely filed but is found to be deficient. *See id.* § 74.351(b) ("If . . . an expert report has not been served within the period specified by Subsection (a) . . . ."). Here, appellees maintain, there is no dispute that "the expert report of Dr. Adame was served within the required period of time." Appellees further assert that

4

challenges to the sufficiency of expert reports, as contrasted with timeliness, are governed exclusively by section 74.351(*l*). Section 74.351(*l*) states that "[a] court shall grant a motion challenging the adequacy of an expert report only if it appears to the court, after hearing, that the report does not represent an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id.* § 74.351(*l*). Because Dr. Bogar's motion, in appellees' view, is "a motion under section 74.351(*l*)," they assert that his right of interlocutory appeal is controlled by section 51.014(a)(10) rather than (a)(9), and no appeal is available from the probate court's order denying him relief. *See id.* § 51.014(a)(10) (permitting appeal from an order that "*grants* relief sought by a motion under Section 74.351(*l*)") (emphasis added). They equate this case to *Academy of Oriental Medicine, L.L.C. v. Andra*, where we held that an order denying a motion challenging the sufficiency of an expert report was governed by section 74.351(*l*) rather than section 74.351(b) and that "[b]ecause this appeal challenges an order that is neither an order denying the relief sought by a motion under § 74.351(b) nor one granting relief sought by a motion under § 74.351(*l*), we lack jurisdiction to hear it." 173 S.W.3d at 186-89.

We disagree with appellees' readings of section 74.351 and *Andra*. Under section 74.351(b), as we have recently reiterated, an "expert report has not been served within the period specified by Subsection (a)" not only if it is untimely (or never) served, but also if the purported timely filed "expert report" is deficient with respect to its required contents. *See Austin Heart P.A. v. Webb*, ___ S.W.3d ___, ___; No. 03-06-00607-CV, 2007 Tex. App. LEXIS 3600, at *19 (Tex. App.—Austin May 9, 2007, no pet. h.); *Apodaca v. Russo*, ___ S.W.3d ___, ___ No. 03-06-00258-CV, 2007 Tex. App. LEXIS 3467, at *13-14 (Tex. App.—Austin May 2, 2007, no pet. h.);

*cf. Walker v. Gutierrez*, 111 S.W.3d 56, 61 (Tex. 2003) (dismissal under former article 4590i warranted for "failure to comply" with report deadline by either failure to file or failure to file adequate report). This conclusion is apparent from the text and structure of section 74.351. Subsection (a) requires the claimant to file one or more "expert reports" not later than the 120th day after the date the original petition was filed, and subsection (b) mandates sanctions "[i]f, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a)." "Expert report" is defined within section 74.351 as: "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6); *see id.* § 74.351(r)(5) (definition of "expert"). Thus, if the instrument does not comply with subsection (r)'s "expert report" definition, it does not satisfy the claimant's requirement under subsection (a) and exposes the claimant to potential sanctions under (b).

Consistent with this construction, subsection (c) of section 74.351 contemplates that noncompliance with the subsection (r) "expert report" definition renders a purported "expert report" not "served" for purposes of subsection (a) and (b). Subsection (c) provides that "[i]f an expert report *has not been served* within the period specified by Subsection (a) because *elements of the report are found deficient*," the trial court is afforded discretion to grant a single 30-day extension "in order to cure the deficiency." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c) (emphases added). Subsection (c), as we will later discuss, is an exception to subsection (b)'s sanctions requirement in

6

cases where "an expert report has not been served within the period specified by Subsection (a)" because the report is deficient, and applies to a subset of such cases. *Id.* § 74.351(b).

Contrary to appellees' suggestions, section 74.351(*l*) does not create a distinct procedure for challenging the sufficiency of expert reports that is mutually exclusive of motions seeking sanctions under subsection (b). Subsection (*l*) establishes a standard of proof for *any* motion challenging the sufficiency of an expert report: whether the report represents "an objective good faith effort to comply with the definition of an expert report in Subsection (r)(6)." *Id*. § 74.351(*l*). A motion challenging the sufficiency of an expert report, section 74.351 contemplates, may be made either before or after the expiration of the 120-day deadline in subsection (a). If made after the deadline passes, the defendant may assert the insufficiency of the report as grounds for sanctions under subsection (b), subject to subsection (c), for the claimant's failure to "serve" an "expert report" within the 120-day period. If the motion is made before the 120-day deadline—as may be necessitated by subsection (a)'s 21-day deadline to file and serve any objection to the sufficiency of a purported "expert report," *id.* § 74.351(a)—the defendant cannot yet seek sanctions under subsection (b) because the claimant could still serve a proper "expert report" "within the period specified by Subsection (a)." *Id.* § 74.351(b). With this type of motion, unlike a motion seeking subsection (b) sanctions, the relief available, as we observed in *Andra*, "is not so clearly enumerated," but would appear to contemplate a declaration of the report's insufficiency or the striking of it. 173 S.W.3d at 187.

In *Andra*, we also pointed out that for purposes of the interlocutory appeals available under section 51.014(a)(9) and (10), in effect "[a] motion challenging the adequacy of an expert

7

report that does not request the relief set out in section 74.351(b) is a motion for relief under 74.351(*l*)." *Id.* We held that the motion in question was governed exclusively by subsection (*l*), and thus subject to section 51.014(a)(10), because it had been filed before the claimant's 120-day deadline had expired and had not requested the sanctions of dismissal or attorney's fees characteristic of section 74.351(b) motions. *See id.* at 186-89. However, we acknowledged that "where there is *no timely expert report because the report or reports were found deficient*," an interlocutory appeal would be available "when the court had denied a defendant's motion [under 74.351(b)] but had not granted the plaintiff additional time to cure deficiencies." *Id.* at 184 n.7 (emphasis added).

Here, Dr. Bogar filed objections to the sufficiency of Dr. Adame's report within 21 days of service, *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), and a motion, after the 120-day deadline had expired, explicitly invoking subsection (b) and asserting that the probate court should dismiss appellees' claim against him with prejudice and award attorney's fees and costs for failure to file a proper "expert report" by the deadline. *See id.* § 74.351(b). The probate court denied that motion without granting an 30-day extension. *Id.* § 74.351(b), (c). That order "denies all or part of the relief sought by a motion under Section 74.351(b)," and we have subject matter jurisdiction to adjudicate Dr. Bogar's appeal from that order. *Id.* § 51.014(a)(9); *see Andra*, 173 S.W.3d at 186-87. We accordingly deny appellees' motion to dismiss Dr. Bogar's appeal.

**Sufficiency of Dr. Adame's report**

We turn now to Dr. Bogar's issue. In his motion for sanctions under section 74.351(b), Dr. Bogar asserted that (1) Dr. Adame's report was insufficient under the "expert report" definition of section 74.351(r)(6), and (2) Dr. Adame, as a pathologist, was not qualified as an expert

to evaluate Dr. Bogar's performance as a rehabilitative medicine specialist. We agree with the former contention and need not reach the latter.

As noted above, the "expert report" or reports that a health care liability claimant must serve under section 74.351(a) must provide "a fair summary of the expert's opinion as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6). A trial court, again, must grant a motion challenging the adequacy of a report only if the report "does not represent an objective good faith effort to comply" with this definition of "expert report." *Id.* § 74.351(*l*). To constitute a "good faith effort," the report must provide enough information to fulfill two purposes: (1) it must inform the defendant of the specific conduct the plaintiff has called into question; and (2) it must provide a basis for the trial court to conclude that the claims have merit. *Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at *4 (citing *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 879 (Tex. 2001)). Although a report need not marshal all of a claimant's proof, it must include the expert's opinion on each of the elements identified in section 74.351. *Id.* at *4-5 (citing *Palacios*, 46 S.W.3d at 878). It is not enough for the report merely to state the expert's conclusions about the statutory elements. *Id.* (citing *Palacios*, 46 S.W.3d at 379). "Rather, the expert must explain the basis of his statements to link his conclusions to the facts." *Id.* at *5 (quoting *Bowie Mem'l*, 79 S.W.3d at 52) (quoting *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)).

9

Importantly, because the statute dictates what is required in the report, the only information relevant to determining whether a report complies with the statute is that within "the four corners" of the report. *Id.* (citing *Palacios*, 46 S.W.3d at 878). This requirement "precludes a court from filling gaps in a report by drawing inferences or guessing as to what the expert likely meant or intended." *Id.* (citing *Bowie Mem'l*, 79 S.W.3d at 53).

We review a trial court's ruling on a section 74.351(b) motion under an abuse of discretion standard. *Palacios*, 46 S.W.3d at 877-78. A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985). A clear failure by the trial court to analyze or apply the law correctly also constitutes an abuse of discretion. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

The document prepared by Dr. Adame recites his qualifications and concludes that "I am qualified based on my education, training and experience to offer an expert opinion regarding the cause and mechanism of death of Mrs. Katherine Ramirez Guerrero. As a pathologist, I am familiar with the standard of care required of physicians not to prescribe drugs either alone or in combination that will cause a fatal overdose." "Such conduct," Dr. Adame adds, "falls below the standard of care required of physicians."

Dr. Adame then lists the medical records and other materials he had reviewed, and summarizes Ms. Guerrero's medical history. Dr. Adame notes that Ms. Guerrero was 76 years of age, and had a "past medical history of hyperlipidemia, osteoarthritis, poorly controlled hypertension, and chronic dizziness." He recounts that Ms. Guerrero had complained of left hip pain following

10

a December 25, 2004 fall and had been "admitted to Seton/Brackenridge Hospital after is was determined that she had a nondisplaced fracture of the left femur," but "[i]t was also determined at that time, that no surgical intervention was needed." Adame then states:

> Her medical problems and rehabilitation were managed by HealthSouth Rehabilitation Hospital of Austin. She was transferred to that facility on December 28, 2004. She was placed on a Duragesic patch at 25 mcg on December 29, 2004. It was increased to 50 mcg on December 30, 2004 because of continued significant pain. She was also given her usual home medications including Doxepin, Norvasc, Zescril, Tenormin, and Imdur. Because of significant drowsiness with the Duragesic patch, her dose was reduced back to 25 mcg. She was also given Protonix for gastrointestinal prophylaxis. Despite a fairly stable hospital course, her pain increased. On January 7, 2005, after her records were reviewed and she was cleared for surgery, she was taken to the operating room at Seton/Brackenridge Hospital for open reduction and internal fixation of her left femur. Her surgery went well and she was transferred back to HealthSouth Rehabilitation Hospital of Austin on January 8, 2005. She resumed her medical regimen along with physical and occupational therapy. Her pain persisted and she was taken off of Duragesic patch post surgery. OxyContin was added to her therapy, initially at 10 mg and later increased to 20 mg. She had bouts of constipation and loose stool which was medically managed. On January 12, 2005 at 9:34 p.m. she experienced cardiopulmonary arrest. Despite cardiopulmonary resuscitation until 10:13 p.m., she was pronounced dead.

Dr. Adame then summarizes the "significant findings" of the autopsy report from the Travis County Medical Examiner's Office, including "the conclusions . . . that Mrs. Guerrero died as a result of an overdose of oxycodone and propoxyphene."

Adame then states his "opinions and conclusions." He begins: "I concur with the autopsy conclusions." He observes that the medical examiners "performed a complete autopsy with toxocological analysis of blood, vitreous humor, and urine," and references certain autopsy findings. Dr. Adame describes the composition and effect of oxycodone and propoxyphene as various dosing

11

levels, including the levels indicative of toxicity and death. Drawing on these observations, he states the following:

> Mrs. Guerrero had postmortem blood oxycodone concentration of 0.25 mg/L. This level and the clinical findings of nausea and labored breathing (noted in nursing notes shortly before her death) indicates that the oxycodone was inducing respiratory depression.
>
> \*        \*        \*
>
> Mrs. Guerrero had postmortem blood propoxyphene levels of 1.0 mg/L. This concentration of propoxyphene and the clinical findings of nausea, labored breathing, and cardiac arrest (noted in nursing notes shortly before her death) indicates that the propoxyphene was inducing respiratory depression, cardiac arrhythmia, and circulatory collapse and subsequent death. In addition, the respiratory depression was exacerbated by the high concentrations of oxycodone (see above).

Dr. Adame then concludes:

> In summary, Mrs. Guerrero had toxic levels of oxycodone along with lethal levels of propoxyphene which caused her demise. The mechanism of death was respiratory depression, cardiac arrhythmia, and circulatory collapse. Additionally, autopsy examination failed to demonstrate an anatomic cause of death.
>
> All of my opinions above are predicated upon a reasonable medical probability.

Dr. Adame's report fails to comply with the requirements of section 74.351. Most notably, it does not identify the person or persons whose conduct is the subject of any of his opinions regarding standard of care, causation, and death. We have held that where the identity of a defendant is not explicitly mentioned within the "four corners" of the report, the report is, for that reason alone, deficient as to that defendant because it would require the reader to infer or make an educated guess as to whose actions the expert is complaining. *Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App.

12

LEXIS 3600, at *15; *Apodaca*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3467, at *13; *see Marichalar*, 198 S.W.3d at 255. The report likewise fails to explain, among other things, how Dr. Bogar breached any standard of care or how that alleged breach caused Ms. Guerrero's death. *See Jernigan v. Langley*, 195 S.W.3d 91, 93-94 (Tex. 2006) (affirming dismissal under former article 4590i where report made only "passing mention" of defendant physician and failed to state how he breached the standard of care or how his alleged breach caused injury); *see also Palacios*, 46 S.W.3d at 879-80 (conclusory statement that "precautions to prevent [patient's] fall were not properly utilized" did not sufficiently apprise physician whether the expert believed that the standard of care required him "to have monitored [the patient] more closely, restrained him more securely, or done something else entirely"). We hold that the probate court abused its discretion in denying Dr. Bogar's motion for sanctions under section 74.351(b). We sustain Dr. Bogar's issue.

**Remedy**

In the probate court, appellees requested that, in the event Dr. Adame's report was found deficient, the court grant them a discretionary 30-day extension under section 74.351(c) to enable them to cure any deficiencies in the report. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). As earlier noted, subsection (c), like (b), applies when "an expert report has not been served within the period specified by Subsection (a)." *See id.* § 74.351(b), (c). Where the "expert report has not been served . . . because elements of the report are found deficient," the trial court is afforded discretion to grant a single 30-day extension in which the claimant can "cure the deficiency." *Id.* § 74.351(c). On appeal, appellees requested that if we reversed the probate court's order denying Dr. Bogar's motion, we remand to the probate court, in lieu of rendering a judgment

of dismissal, to afford the lower court the opportunity to exercise its discretion under subsection (c). We recently granted such relief in another case involving an "expert report" that we held deficient. *Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at *20-21. We discerned that subsection (c) manifested legislative intent that in "at least some situations where a timely report is deficient . . . the trial court should consider whether the deficiency is such that it warrants allowing a cure period." *Id*. We found such a situation to exist in *Austin Heart*, and held that subsection (c) required us to remand in lieu of rendering a judgment of dismissal and sanctions. *Id*.

In *Austin Heart*, we considered an expert report that repeatedly referred in a background section to a defendant physician, Dr. Kessler, among other identified and unidentified caregivers, but failed to explicitly link Dr. Kessler's conduct to the expert's otherwise sufficient opinions regarding the applicable standard of care, how it was breached, and how the breach caused injury. *Id.* at *14-15. We concluded that the report was deficient because "it requires the reader to infer or make an educated guess that Dr. Cororve [the expert] is identifying Dr. Kessler as the physician who breached the standard of care and caused injury" and that "[t]here is nothing *in the report* that links Dr. Kessler to Dr. Cororve's opinions regarding the breach of the standard of care and causation any more than Dr. Rodgers or the other 'various physicians' references." *Id.* at *11. However, we concluded that "[t]he tenor of Dr. Cororve's report, coupled with the fact that there is only one physician defendant, makes it quite likely that Dr. Cororve intended to opine that Dr. Kessler breached the standard of care and caused injury even though the report did not contain that opinion. The report's failure on this point is the kind of defect that the cure provisions of section 74.351(c) were designed to address." *Id.* at *14. We added that the report "was served timely, it

14

makes more than a passing reference to Dr. Kessler, and it notes conduct by Dr. Kessler that could be linked to the expert's conclusions regarding the breach of the standard of care and causation. It is deficient only because it does not expressly make the link between the expert's conclusions and the referenced conduct of Dr. Kessler." *Id*. at \*19.

We distinguished Dr. Cororve's report with those that other courts have held to be so deficient as to constitute an incurable "no report"—as if the claimant had wholly failed to file an instrument purporting to be an "expert report" as to the defendant within the 120-day period——and not merely containing "elements . . . found deficient." *Id*. at \*19; *see* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(c). In *Jernigan v. Langley*, the Texas Supreme Court affirmed a trial court's dismissal of a health care liability claim as to Dr. Jernigan based on a report that made a mere "passing reference" to him and wholly failed to link him or his conduct to the expert's opinions regarding breach of standard of care. 195 S.W.3d at 94. The supreme court concluded that "the trial court had no discretion but to conclude, as it did here, that Langley's claims against Dr. Jernigan must be dismissed." *Id.* Similarly, in *Garcia v. Marichalar*, a report referenced several health care providers without mentioning the defendant physician. 198 S.W.3d at 254-55. As we observed, "[t]here was literally nothing in the report that related to the physician in any way" and that "[t]hus, the report was no report to him." *Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at \*16. We acknowledged that in these types of cases, trial (and appellate) courts logically could have no discretion to effectuate a cure period where no report exists as to a defendant; the only possible "cure" would be the creation of a new, previously nonexistent report, an alternative that the legislature has forbidden under section 74.351. *Id.* at \*18; *see Apodaca*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3467, at \*13; *Marichalar*, 198 S.W.3d at 255.

15

We contrasted these reports with that in *Austin Heart*, observing that:

> [i]f the expert is of the opinion that Dr. Kessler's conduct breached the standard of care and caused injury, he will not have to generate a new, previously nonexistent report. He will simply have to add the link between his already stated conclusions and the already referenced conduct of Dr. Kessler. Therefore, the circumstances here are not similar to the situation where a plaintiff simply has missed the deadline for serving a report with respect to the conduct of a physician.

*Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at *21. By contrast, we conclude that the present case is.

As previously noted, Dr. Adame never mentions Dr. Bogar anywhere in his report. He never describes the standard of care potentially applicable to Dr. Bogar, other than a broad reference to "the standard of care required of physicians not to prescribe drugs either alone or in combination that will cause a fatal overdose," which he never applies or analyzes in light of specific facts and circumstances. Dr. Adame never describes how Dr. Bogar might have breached a standard of care. In essence, Dr. Adame's report is a second autopsy report, opining about the cause of Ms. Guerrero's death without explaining who caused it or how.

Although the line between "no report" and a defective-but-curable report may sometimes be elusive, we conclude that Dr. Adame's report is clearly "no report." Its defects include the types of wholesale omissions identified in *Jernigan* and *Marichalar*, and Dr. Adame cannot cure them simply by "add[ing] the link between his already stated conclusions and the already referenced conduct" of Dr. Bogar. *See Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at *21. There is nothing in the report regarding Dr. Bogar that could be linked to anything. Consequently,

16

Dr. Adame could "cure" the deficiencies in his report only by "generat[ing] a new, previously nonexistent report" as to Dr. Bogar. *See id.* Such a remedy is proscribed by section 74.351.[1]

## CONCLUSION

We must render judgment dismissing appellees' claims against Dr. Bogar with prejudice and awarding Dr. Bogar attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). We remand to the probate court for a determination of the amount of the attorney's fee award. *See Marichalar*, 198 S.W.3d at 256-57; *Pro Path Servs., L.L.P. v. Koch*, 192 S.W.3d 667, 672 (Tex. App.—Dallas 2006, pet. denied).

_____

Bob Pemberton, Justice

Before Justices Patterson, Pemberton and Waldrop;
   Dissenting Opinion by Justice Patterson

Reversed and Remanded

Filed: June 28, 2007

_____

[1] The dissent criticizes this holding, suggesting that we could remand to the probate court in the same manner as in *Austin Heart*, ___ S.W.3d at ___ (Patterson, J., dissenting). As the dissent has acknowledged in *Austin Heart* and elsewhere, section 74.351 does not permit such a remedy where, as here, the report constitutes no report. *See Austin Heart*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3600, at *39 (Patterson, J., dissenting) ("[t]he difference between the two is strategically significant. If the report is 'no report,' then the trial court *must* dismiss the case with prejudice and has no discretion to grant a 30-day extension.") (emphasis in original); *Apodaca*, ___ S.W.3d at ___, 2007 Tex. App. LEXIS 3467, at *13 ("If a report fails to address the defendant physician, it constitutes no report as to that defendant, and the trial court may not grant a 30-day extension.") (citing *Garcia v. Marichalar*, 185 S.W.3d 70, 74 (Tex. App. San Antonio 2005, no pet.).