# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00576-CV

**The Estate of Richard Earl Allen, by its Beneficiaries, Sidney Abbot Allen and Tammy Lynn Allen-Schulz; and Sidney Abbott Allen and Tammy Lynn Allen-Schulz, Individually, Appellants**

**v.**

**Scott & White Clinic; Scott & White Memorial Hospital; Scott, Sherwood, and Brindley Foundation; and Does I Through X, and Does XI Through XX, Appellees**

## FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT NO. 230,215-B, HONORABLE RICK MORRIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal involves a health-care liability claim stemming from the treatment of Richard Earl Allen for colon cancer. Shortly after having surgery, Allen passed away, and the Estate of Allen, by its beneficiaries Sidney Abbot Allen and Tammy Lynn Allen-Schulz, as well as Sidney and Tammy individually (collectively, the "Estate") filed suit against the various health-care providers who treated Allen. Nearly four months later, the Estate nonsuited its claims. Later, the Estate refiled its suit and also made arrangements to serve its expert report on the health-care providers. In response to the second suit, the health-care providers filed a motion to dismiss the suit, alleging that the Estate's expert report had not been timely served. The district court granted the motion to dismiss, and the Estate appeals that determination. We will affirm the district court's order dismissing the suit.

## STATUTORY FRAMEWORK

As mentioned above, this case involves a health-care-liability claim. For health-care claims, section 74.351 of the civil practice and remedies code sets out procedural requirements that must be complied with early on or else the claim is subject to dismissal. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). Specifically, the provision requires that a claimant, "not later than the 120th day after the date the original petition was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted." *Id.* § 74.351(a); *see Mokkala v. Mead*, 178 S.W.3d 66, 71 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (explaining that "120-day period is triggered on the date the claimant files a petition alleging a particular health care liability claim, not the date she files another lawsuit asserting that same claim"). Moreover, the provision explains that if an expert report has not been "served" within the 120-day deadline, the trial court must dismiss "the claim with respect to the physician or healthcare provider, with prejudice to the refiling of the claim," provided that the "affected physician or health care provider" files a motion to dismiss. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b). Under the statute, the parties may mutually agree to a different deadline if they choose, and the trial court does have the authority to grant a single thirty-day extension when a report is timely filed but is deficient in some other respect. *Id.* § 74.351(a), (c). However, there are no other statutory exceptions to the 120-day deadline. *See Badiga v. Lopez*, 274 S.W.3d 681, 685 (Tex. 2009).

The legislature imposed this strict deadline in order to help "reduce excessive frequency and severity of health care liability claims through reasonable improvements and

2

modifications in the Texas insurance, tort, and medical practice systems." Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884. By enacting this provision, the legislature created "a statute of limitations type deadline within which expert reports must be served." *Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). In other words, if the report is not filed by the deadline, trial courts may not grant extensions to file and have no discretion to deny a motion to dismiss filed by a health-care provider. *Id.* at 319-20.

## BACKGROUND

Allen was diagnosed with colon cancer and underwent surgery in order to treat the illness. Shortly after the surgery, Allen passed away. Ultimately, the Estate filed suit against the following health-care providers who treated Allen: Scott & White Clinic; Scott & White Memorial Hospital; Scott, Sherwood, and Brindley Foundation; and various unnamed employees working for one of the three previously named parties (collectively "Scott & White"). Essentially, the Estate claimed that Allen's death was caused by various negligent acts committed by Scott & White.

Approximately 118 days after filing suit, the Estate nonsuited its claims against Scott & White. *See* Tex. R. Civ. P. 162 (allowing plaintiff to dismiss suit prior to introduction of evidence). Nearly four months later, the Estate refiled its suit against Scott & White. The second petition alleged the same negligence claims as were mentioned in the original petition and named the same defendants, but the second petition also included more unnamed employees.[1] The Estate attached an expert report to the second petition.

---

[1] The second petition also contained an additional cause of action alleging that Scott & White negligently failed to prevent debris from a nearby construction site from entering "sensitive areas," including Allen's room.

3

When the Estate filed its second lawsuit, it made arrangements to have service of citation be provided by the sheriff's office. *See id.* R. 21a (listing permissible methods for service). The sheriff's office received the second petition on the same day that it was filed with the district court, but the sheriff did not deliver the petition or the attached expert report to Scott & White until four days later.

Shortly after receiving a copy of the petition, Scott & White filed a motion to dismiss the suit under section 74.351, arguing that the expert's report had not been timely served. In response to the motion to dismiss, the district court held a hearing and ultimately issued an order granting Scott & White's motion to dismiss.

The Estate appeals the district court's order dismissing the suit against Scott & White.

**DISCUSSION**

In its sole issue on appeal, the Estate asserts that the district court erred when it granted Scott & White's motion to dismiss. Appellate courts review a ruling on a motion to dismiss under subsection 74.351(b) for an abuse of discretion. *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 877-78 (Tex. 2001) (concluding that courts apply abuse-of-discretion standard to rulings under predecessor to subsection 74.351(b)); *Apodaca v. Russo*, 228 S.W.3d 252, 254 (Tex. App.—Austin 2007, no pet.) (relying on *Palacios* for proposition that courts review ruling under subsection 74.351(b) for abuse of discretion). In a case like this in which there are no findings of fact or conclusions of law from the trial court, a judgment dismissing a health-care-liability claim under section 74.351 will be upheld on any legal theory supported by the record, and findings necessary to that holding will be implied. *Rosemond v. Al-Lahiq*, 331 S.W.3d

764, 766 (Tex. 2011) (per curiam). Under an abuse-of-discretion standard, appellate courts review legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009). Determinations regarding the meaning of section 74.351 are legal questions and are, therefore, reviewed de novo. *See Stockton v. Offenbach*, No. 09-0446, ___ S.W.3d ___, 2011 Tex. LEXIS 128, at *11 (Tex. Feb. 25, 2011).

When asserting that the district court abused its discretion, the Estate admits that section 74.351 requires that health-care defendants be served with an expert report within 120 days of the date that a plaintiff's original petition is filed, but the Estate insists that it complied with that deadline even though Scott & White was not actually served until 237 days after the Estate filed its original petition. Essentially, the Estate asserts that because it nonsuited the first suit 118 days after initially filing suit, there were two days remaining in the deadline. Further, the Estate argues that the deadline did not begin to run again until it refiled suit. Moreover, the Estate notes that it attached the required expert report to the second petition and that it made arrangements to serve Scott & White on the same day that it refiled suit. Although the Estate acknowledges that Scott & White was not actually served until four days after the suit was refiled and that the date of service was past the two days allegedly remaining in the statutory deadline, the Estate insists that the date of service relates back to the date that it made arrangements to execute service because it acted with due diligence in attempting to serve Scott & White. *Cf. Gant v. DeLeon*, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) (explaining that if plaintiff files suit within statute of limitations but does not serve defendant until after deadline passed, date of service "relates back to the date of filing if

5

the plaintiff exercised diligence in effecting service").[2] Because the Estate made arrangements to execute service on Scott & White within the two days purportedly remaining in the statutory deadline, the Estate urges that it satisfied the 120-day deadline.

Inherent within the Estate's arguments is the foundational assumption that the Estate's nonsuit against Scott & White somehow tolled the running of the 120-day deadline.[3] The Estate does not refer to any authority supporting this assumption, and we have been unable to find any case directly addressing this particular tolling issue.[4] The few cases that have discussed tolling in relation

---

[2] Recently, the supreme court released an opinion that discussed the issue of whether a claimant's diligent efforts to serve a health-care provider with an expert report may cause the date of service to relate back to the date of filing. *See Stockton v. Offenbach*, No. 09-0446, ___ S.W.3d ___, 2011 Tex. LEXIS 128, at *11-18 (Tex. Feb. 25, 2011). However, the supreme court did not have to decide whether the relation-back doctrine could be applied because it concluded that the evidence presented was legally insufficient to raise the issue. *Id.* at *14, 17.

[3] We note that under the predecessor to section 74.351, "a plaintiff was required to file an expert report within 180 days of filing suit or to nonsuit the claim voluntarily." *Crites v. Collins*, 284 S.W.3d 839, 843 (Tex. 2009). Section 74.351 "does not contain a similar provision allowing a plaintiff to choose between voluntarily nonsuiting and filing an expert report by the deadline." *Id.*; *see Town Hall Estates - Arlington, Inc. v. Cannon*, 331 S.W.3d 793, 796 (Tex. App.—Fort Worth 2010, no pet.) (noting that section 74.351 omitted provision authorizing nonsuit to avoid expert repot deadline); *Mokkala v. Mead*, 178 S.W.3d 66, 73 n.10 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (explaining that legislature specifically removed provision allowing plaintiff to nonsuit action if he failed to furnish expert report by statutory deadline).

[4] At least one appellate court was presented with a similar issue. *See Acosta v. Chheda*, No. 01-07-00398-CV, 2007 Tex. App. LEXIS 8743 (Tex. App.—Houston [1st Dist.] Nov. 1, 2007, pet. denied) (mem. op.). Like the Estate, the claimant in *Acosta* nonsuited her claims against a health-care provider shortly before the expiration of the 120-day deadline and then refiled suit against the provider several months later. *Id.* at *2. In reaching its conclusion, the appellate court noted that it was not necessary to make a determination regarding whether the nonsuit tolled the 120-day deadline in order to resolve the case. Instead, the court affirmed the trial court's dismissal of the claim because the claimant failed to file the required report by the tolled deadline suggested by the claimant. *Id.* at *9. Accordingly, regardless of whether the deadline was tolled, the claimant in *Acosta* did not comply with the 120-day deadline.

6

to section 74.351 do not support the idea that the 120-day deadline may be tolled. *See Otero v. Alonzo*, No. 13-10-00304-CV, 2011 Tex. App. LEXIS 1559, at *9 (Tex. App.—Corpus Christi Mar. 3, 2011, no pet. h.) (mem. op.) (stating that "defendant health care provider's failure to provide [requested] medical records . . . does not toll the 120-day expert report deadline"); *Garza v. Saenz*, No. 13-09-00111-CV, 2010 Tex. App. LEXIS 1615, at *7 (Tex. App.—Corpus Christi Mar. 4, 2010, no pet.) (mem. op.) (explaining that "claimant's efforts to obtain medical records . . . do not serve to toll or extend the expert report deadline"); *Estate of Regis v. Harris County Hosp. Dist.*, 208 S.W.3d 64, 69 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that provision of civil practice and remedies code requiring plaintiff to provide notice before filing suit and specifically tolling statute of limitations for health-care claims when notice is filed does not extend 120-day deadline for filing expert report); *id.* (determining that provision of code that abates proceedings against health-care provider if plaintiff does not file proper authorization for release of medical information does not toll 120-day deadline for filing expert report); *Quint v. Alexander*, No. 03-04-00819-CV, 2005 Tex. App. LEXIS 8868, at *12 (Tex. App.—Austin Oct. 28, 2005, pet. denied) (mem. op.) (explaining that filing original petition before expiration of 60-day pre-suit notice period did not extend 120-day deadline for filing expert report).[5]

---

[5] Although we have been unable to find a case deciding whether tolling is permissible in the circumstances present here, we note that various courts have determined that a plaintiff in a "health-care liability suit cannot restart the mandatory 120-day deadline by nonsuiting and refiling the same claims against the same defendant." *Davis v. Baker*, No. 03-10-00324-CV, 2010 Tex. App. LEXIS 10317, at *5-6 (Tex. App.—Austin Dec. 22, 2010, no pet.) (mem. op.); *see Mokkala v. Mead*, 178 S.W.3d 66, 68, 74-76 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (refusing to allow plaintiff to restart 120-day period through nonsuit and subsequent refiling of health-care liability claim because doing so would be inconsistent with language of statute and legislative goals).

Moreover, nothing in the language of section 74.351 expressly authorizes tolling the 120-day deadline. *See Carroll v. Humsi*, No. 03-09-00292-CV, 2011 Tex. App. LEXIS 2892, at *13 (Tex. App.—Austin April 13, 2011, no pet. h.) (noting that legislature did not grant any tolling provisions to 120-day deadline to account for difficulties claimant may encounter in naming parties); *cf. Lone Star HMA, L.P. v. Wheeler*, 292 S.W.3d 812, 817 (Tex. App.—Dallas 2009, no pet.) (explaining that statute makes no exception for time it takes to effectuate service and does not address failed attempts at service); *see also Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 768-69 (Tex. 2000) (explaining that when asked to determine statute's meaning, courts should look to plain meaning of words used in statute). The absence of any language allowing for tolling is particularly telling given that the legislature has explicitly authorized the tolling of other deadlines related to health-care-liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a), (c) (West 2011) (requiring person pursuing health-care-liability claim to give health-care provider 60 days notice before filing suit and tolling "the applicable statute of limitations to and including a period of 75 days following the giving of the notice"); *see also USA Waste Servs. of Houston, Inc. v. Strayhorn*, 150 S.W.3d 491, 494 (Tex. App.—Austin 2004, pet. denied) (noting that courts should presume that every word was deliberately chosen and that excluded words were left out on purpose); *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998) (stating that legislative intent should be determined by considering entire act).

Furthermore, allowing a plaintiff to toll the passage of the 120-day deadline would effectively expand the deadline for filing an expert report far beyond the 120-day deadline imposed by the legislature. *See Mokkala*, 178 S.W.3d at 76 (explaining that allowing plaintiff to restart 120-day deadline by nonsuiting claim and then later refiling suit would expand 120-day deadline to

8

deadline imposed by statute of limitations); *see also id.* at 73 n.10 (stating that like statute of limitations, "expiration of the 120-day period for filing an expert report cannot be cancelled by a nonsuit"); *cf. Daughtery v. Schiessler*, 229 S.W.3d 773, 775 (Tex. App.—Eastland 2007, no pet.) (noting that if court concluded that 120-day period ran from time previously nonsuited claim was refiled, "medical malpractice claimants would be able to file a petition, take a nonsuit anytime prior to the health care provider's filing of a motion to dismiss, file another petition, take another nonsuit, etc. until the running of limitations"). We cannot adopt a construction that would effectively eviscerate a clear statutory mandate. *See Mokkala*, 178 S.W.3d at 74 (quoting hearings on House Bill 4 in which Representative Joe Nixon stated that amendments were designed to promote efficiency and that 120-day deadline must be treated like statute of limitations); *see also* Tex. Gov't Code Ann. § 311.023 (West 2005) (allowing courts to consider "object sought to be obtained" as well as "legislative history" when determining meaning of statutes); *cf. Town Hall Estates - Arlington, Inc. v. Cannon*, 331 S.W.3d 793, 796 (Tex. App.—Fort Worth 2010, no pet.) (noting that allowing claimant to file and nonsuit suit as many times as he wanted within statute of limitations without filing expert report would "thwart" legislative purposes of reducing frequency of healthcare claims, decreasing costs of those claims, and ensuring awards are related to actual damages). Admittedly, our determination here may seem harsh, but it "is the province of the legislature—not this court—to provide for extensions or grace periods regarding" the 120-day deadline.[6] *Mokkala*,

---

[6] We do note that the harshness of this result is somewhat ameliorated by the fact that the plaintiff generally controls when "a petition alleging a health care liability claim" gets filed and therefore also controls "the commencement of the" 120-day period. *Mokkala*, 178 S.W.3d at 73. Accordingly, provided that the statute of limitations does not run, "a plaintiff can therefore wait to file a petition until she has obtained, and can serve, the expert report." *Id.*

9

178 S.W.3d at 76; *see also Stockton*, 2011 Tex. LEXIS 128, at \*22 (explaining that courts are not permitted to rewrite in name of statutory construction in effort to reach more desirable result).

For these reasons, we conclude that the Estate's decision to nonsuit Scott & White did not toll the passage of the 120-day deadline. Accordingly, more than 120 days had passed between the time that the Estate filed its original petition and the time that the Estate made arrangements to serve and actually served Scott & White with its expert report.

In her concurring and dissenting opinion, Justice Henson notes that the supreme court has applied the concept of tolling to the deadline for filing an expert report in circumstances that differ from those of the present case, *see Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671 (Tex. 2008), and therefore contends that we should apply the doctrine of tolling to this case. In *Gardner*, a plaintiff sued a healthcare provider, but the healthcare provider failed to file an answer. *Id.* at 670. Accordingly, the trial court issued a default judgment against the healthcare provider, and the plaintiff did not serve the defaulting party with an expert report. After the trial court granted the default judgment, the healthcare provider filed an answer and a motion to set aside the default judgment. *Id.* The trial court agreed to set aside the default judgment, and the plaintiff served the provider with an expert report. *Id.* Even though the trial court did not set aside the default judgment until after the expiration of the 120-day deadline, the healthcare provider filed a motion to dismiss asserting that the expert report was not served within 120 days of the date that the plaintiff filed its petition. *Id.* at 671.

The supreme court determined that the deadline for filing an expert report was tolled from the deadline for filing an answer in the case until the healthcare provider entered an appearance.

*Id.*; *see* Tex. R. Civ. P. 99(b) (providing deadline by which defendant must file answer to petition). In reaching this conclusion, the supreme court noted that the purpose of an expert report is to inform the healthcare provider of its allegedly improper conduct and to provide a basis for the trial court to determine if the plaintiff's claims have merit. *Gardner*, 274 S.W.3d at 671. In addition, the court explained that the effect of a default is to admit all allegations against the defaulting party. *Id.* In light of the preceding, the court determined that "it made little sense to require service of an expert report on a party who by default has admitted the plaintiff's allegations." *Id.*

The circumstances in *Gardner* are distinguishable from those in the present case. Scott & White responded to the Estate's petition, and no default judgment was rendered against Scott & White. Accordingly, Scott & White did not, by default, admit to the allegations against it, and the Estate was required to timely file a report that informed Scott & White of the allegations against it and that provided a basis for the trial court to determine if the claims against Scott & White had merit. As described more thoroughly previously, applying tolling to the circumstances present here would allow plaintiffs to expand the statutory deadline for filing an expert report simply by nonsuiting the claim one or more times. This would effectively nullify the legislative intent in imposing the 120-day deadline. Similarly, the legislative intent of providing plaintiffs with a full 120 days in which to serve an expert report would have been thwarted in *Gardner* had the supreme court not decided to toll the deadline for filing an expert report when a default judgment is entered against a defendant healthcare provider and when that judgment is later set aside after the expiration of the 120-day deadline.

11

For the reasons previously given, we must conclude that the report was not timely filed and that the district court did not abuse its discretion by dismissing with prejudice the Estate's suit against Scott & White. Therefore, we overrule the Estate's sole issue on appeal.[7]

**CONCLUSION**

Having overruled the Estate's issue on appeal, we affirm the order of the district court granting Scott & White's motion to dismiss.

_____

David Puryear,  Justice

Before Justices Puryear, Henson and Goodwin
   Concurring and Dissenting Opinion by Justice Henson;

Affirmed

Filed:   July 22, 2011

_____

[7] In addition to requiring dismissal if the 120-day deadline is not complied with, section 74.351 states that the trial court must also issue an order awarding "the affected physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider." Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2011). When Scott & White filed its motion to dismiss, it also sought attorney's fees and later filed an affidavit detailing the amount of fees incurred. After receiving the affidavit, the district court ordered the Estate to pay Scott & White $14,845.70 in attorney's fees.

In its brief, Scott & White specifically states that in the event that this Court affirms the order of the district court, we should also in "the interest of judicial economy . . . render judgment in its favor for the $14,845.70 in reasonable and necessary attorneys' fees and expenses already found appropriate and proper by the trial court." As mentioned above, the district court has already issued an order awarding Scott & White attorney's fees, and the Estate has not lodged a specific challenge on appeal to the attorney's fees award. Moreover, we have overruled the only issue presented by the Estate and, thereby, affirmed the district court's dismissal of the suit against Scott & White. Accordingly, we need not make any determination regarding the attorney's fees that the district court previously awarded.