Clifton **THOMAS**, M.D. and Sharon Lambi, P.A., Appellants,

v.

Aracelly **TORREZ**, Individually, and as Representative of the Estate of Ricardo Torrez and as Next Friend of Ricardo Isaiah Torrez, Minor Child, Appellee.

No. 14–10–00281–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 31, 2011.

---

Wallace Wade Flasowski IV, Charles Victor Haley, Nacogdoches, for appellants.

Bradford Gilbert Leigh, John Gregory Myers, Melanie Ann Rubinsky, Joel Randal Sprott, Neil C. McCabe, Houston, for appellee.

Panel consists of Justices ANDERSON, FROST, and BROWN.

## OPINION

KEM THOMPSON FROST, Justice.

The wife of a man who died in a hospital following surgery filed wrongful-death and survival claims against a surgeon and a physician's assistant. The trial court sustained the objections of these defendants to the sufficiency of the reports from the plaintiff's experts; but, rather than dismiss the claims, the trial court granted a thirty-day extension under section 74.351(c) of the Texas Civil Practice and

Remedies Code and denied these defendants' motions to dismiss under section 74.351(b). The surgeon and the physician's assistant now seek to appeal from this order. As to the surgeon, we conclude that the plaintiff served a report that was found deficient within the meaning of section 74.351(c); therefore, we dismiss the surgeon's appeal for lack of jurisdiction under section 51.014(a)(9) of the Texas Civil Practice and Remedies Code. But as to the physician's assistant, we conclude that the plaintiff served no report that could be found deficient. Therefore, we have jurisdiction over the physician's assistant's appeal, and we reverse and remand as to the physician's assistant.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ricardo Torrez underwent bariatric surgery at Renaissance Hospital, and he continued to receive care there following the surgery. Five days later he died in the hospital. Appellee/plaintiff Aracelly Torrez, individually, and as representative of the estate of Ricardo Torrez and as next friend of Ricardo Isaiah Torrez, minor child (hereinafter, the "Claimant") filed suit against the two appellants, Clifton Thomas, M.D., and Sharon Lambi, P.A., and also against Bryan C. Lipsen, M.D., Raman Mocharla, M.D., Tsehay Tekeste, R.N., Renaissance Hospital Houston, Inc., and other corporate entities. The Claimant asserted wrongful-death claims on her own behalf and on behalf of her son; she also asserted a claim under the survival statute. Alleging numerous negligent acts or omissions, the Claimant asserted health care liability claims against all defendants under chapter 74 of the Texas Civil Practice and Remedies Code.[1]

Within 120 days of filing suit, the Claimant served reports and curricula vitae from three experts: James D. Leo, M.D., F.C.C.P.; Mitchell Scott Whiteman, M.D.; and Jenny Beerman, R.N., M.N. All defendants filed objections to the sufficiency of these reports under section 74.351(a) and moved to dismiss the Claimant's claims under section 74.351(b). After oral hearing, the trial court sustained the objections of Dr. Thomas and Lambi (hereinafter, collectively the "Health Care Providers") to the sufficiency of the reports. The trial court granted a thirty-day extension under section 74.351(c) and denied these parties' motions to dismiss under section 74.351(b). Invoking section 51.014(a)(9) of the Texas Civil Practice and Remedies Code, the Health Care Providers have sought to appeal the trial court's denial of their motions to dismiss. The Claimant asserts that this court lacks appellate jurisdiction under this statute because, in the order from which the Health Care Providers seek to appeal, the trial court granted an extension under section 74.351(c). *See* TEX. CIV. PRAC. & REM.CODE ANN § 51.014(a)(9) (West 2008) (allowing appeal from an order that denies a motion under section 74.351(b) "except that an appeal may not be taken from an order granting an extension under Section 74.351").

## II. ANALYSIS

In their sole issue, the Health Care Providers assert that the trial court erred in denying their motion to dismiss the claims against them under section 74.351(b). The Health Care Providers assert that this court has appellate jurisdiction because the three reports served by the Claimant constitute "no report" as to the Health Care Providers. We first consider develop-

---

1. Unless otherwise stated, all statutory references in this opinion are to the Texas Civil Practice and Remedies Code.

ments in the law regarding this jurisdictional issue and then examine whether this court has jurisdiction as to each of the Health Care Providers.

## A. The Requirements of Section 74.351

Within 120 days of filing the original petition ("Time Period"), a claimant in a health care liability claim must serve on each party or the party's attorney an "expert report" for each physician or health care provider against whom the claimant asserts a liability claim, along with a curriculum vitae for each expert.[2] *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.351(a) (West 2011). To satisfy this requirement, the report must be "a written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed." *Id.* § 74.351(r)(6); *see also id.* § 74.351(r)(5) (defining "expert" as used in the definition of "expert report"). A claimant can satisfy this statutory requirement by serving reports of separate experts who address different defendants or who address different required elements, as long as the reports, taken together, contain all required elements for an "expert report." *See id.* § 74.351(a), (i), (r)(6). Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of a report not later than the twenty-first day after the date the report was served; otherwise the defendant's objections are waived. *See id.*

If, as to a defendant physician or health care provider, a claimant has not served an "expert report" within the Time Period, on the motion of the affected defendant, the trial court shall, subject to one exception, (1) dismiss with prejudice the claims against the defendant in question, and (2) award the defendant reasonable attorney's fees and court costs incurred by that defendant. *See id.* § 74.351(b). The exception to the foregoing rule is that the trial court may grant one thirty-day extension to a claimant to cure deficiencies in a report or reports if a claimant has not served an "expert report" within the Time Period "because elements of the report are found deficient." *Id.* § 74.351(c).

## B. Potentially Confusing Statutory Terms

Under the unambiguous language of section 74.351, a claimant satisfies the "expert report" requirement as to a defendant only by properly serving within the Time Period, a report or reports that satisfy all the requirements for an "expert report" as to that defendant. *See id.* § 74.351(a), (b), (i), (r)(6). The following are some of the ways in which a claimant can fail to serve an "expert report" as to a defendant:

- A claimant serves nothing at all on any defendant.

- A claimant serves a report in an attempt to satisfy all the requirements for an "expert report" as to that defendant but fails in this attempt because elements of the report are found to be deficient.

- A claimant serves a report in an attempt to satisfy all the requirements for an "expert report" as to other defendants, but the report does not implicate the conduct of the defendant in question.

TEX. CIV. PRAC. & REM.CODE ANN § 74.351(a) (West 2011).

---

2.  The affected parties can extend the date for serving a report by written agreement. *See*

*See id.* § 74.351(a), (c); *Ogletree v. Matthews,* 262 S.W.3d 316, 320 & n. 2 (Tex. 2007). To say that a claimant served no expert report as to a defendant does not indicate whether the claimant served no report at all or whether the claimant served a report unsuccessfully attempting to satisfy the requirements for an expert report as to that defendant. The latter situation can be distinguished from the former by stating that the claimant served a "deficient report" as opposed to "no report." *See Ogletree,* 262 S.W.3d at 320 & n. 2. But under the nomenclature used in the statute, both a "deficient report" and "no report" fall within the category of "no expert report." *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a), (c); *Ogletree,* 262 S.W.3d at 320 & n. 2.

## C. Cases Regarding Appellate Jurisdiction under Section 51.014(a)(9)

In *Ogletree,* the defendant urologist objected to the plaintiff's reports only on the grounds that no curriculum vitae was served as to one expert and that none of the experts was qualified to testify regarding the alleged negligence of a urologist. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (requiring that "expert report" be made by an "expert"); *id.* § 74.351(r)(5) (defining "expert" and including requirements regarding qualifications of experts); *Ogletree,* 262 S.W.3d at 317–18. The *Ogletree* court noted that one report was directed solely to the defendant urologist's care. *See id.* at 318. In this report, the expert opined that the procedure performed by the urologist should have been done with fluoroscopic guidance and that, with such guidance, the plaintiffs injury might well have been avoided or at least minimized. *See id.* The *Ogletree* court did not mention whether this expert stated a standard of care for the urologist in the report, but the defendant did not object to any such failure. *See id.* at 317–

18. The trial court found that this report was deficient, denied the urologist's motion to dismiss, and granted the plaintiff a thirty-day extension to cure the deficiencies in this report. *See id.* at 317–18.

The *Ogletree* court had to decide whether appellate courts had jurisdiction over the urologist's appeal from the trial court's order under section 51.014(a)(9). *See* Tex. Civ. Prac. & Rem.Code Ann. § 51.014(a)(9) (allowing appeal from an order that denies a motion under section 74.351(b) "except that an appeal may not be taken from an order granting an extension under [s]ection 74.351"). The *Ogletree* court distinguished between a deficient report and no report. *See Ogletree,* 262 S.W.3d at 320–21. Concluding that the plaintiff had served a report within the Time Period and that the report was deficient, the *Ogletree* court concluded that this report was a "deficient report" as to the defendant urologist. *See id.* Without addressing the outcome in the "no report" scenario, the *Ogletree* court held that a defendant cannot appeal the denial of a motion to dismiss under section 74.351(b) if the trial court also granted a thirty-day extension under section 74.351(c) to give the plaintiff an opportunity to cure a report that was deficient as to that defendant. *See id.* at 320–21. The *Ogletree* court indicated that a deficient report was one that "implicated [the defendant in question's] conduct." *Id.* at 321.

In *Rivenes v. Holden,* the trial court denied Dr. Rivenes's motion to dismiss under section 74.351(b) and granted an extension under section 74.351(c). *See* 257 S.W.3d 332, 335 (Tex.App.-Houston [14th Dist.] 2008, pet. denied). The *Rivenes* court held that it nonetheless had appellate jurisdiction over Dr. Rivenes's appeal because the case fell within the "no report" category and because section 51.014(a)(9) allows a defendant to appeal the denial of

his motion to dismiss under section 74.351(b) if, as to that defendant, the plaintiff served "no report" within the Time Period. *See id.* at 340–41. The *Rivenes* court held that, although the plaintiff served a report within the Time Period, the expert in this report (1) addressed the conduct of other defendants, (2) did not offer any opinions concerning the conduct of Dr. Rivenes or implicate his conduct, (3) did not discuss whether the care rendered by Dr. Rivenes failed to meet the applicable standard of care, and (4) did not address how any alleged conduct by Dr. Rivenes caused the plaintiff to suffer injury or damage. *See id.* at 337–39. The *Rivenes* court held that it had appellate jurisdiction under section 51.014(a)(9) because, as to Dr. Rivenes, the plaintiff's report was "no report" rather than a "deficient report." *See id.* at 338, 340–41.

The Supreme Court of Texas confronted a similar issue in *Badiga v. Lopez,* a case in which the plaintiff filed a health care liability claim against a single defendant doctor. *See* 274 S.W.3d 681, 682 (Tex. 2009). The plaintiff served no report whatsoever within the Time Period. *See id.* The trial court denied Dr. Badiga's motion to dismiss under section 74.351(b) and granted a thirty-day extension under section 74.351(c). *See id.* The trial court's granting of an extension was erroneous because an extension is not available as a matter of law if the plaintiff serves no report as to a defendant. *See id.* at 683. But the issue in *Badiga* was not whether the trial court erred but whether the appellate court had jurisdiction under section 51.014(a)(9) over Dr. Badiga's appeal from the denial of his motion to dismiss. *See id.* at 682. The *Badiga* court noted that, under section 51.014(a)(9), the legislature did not permit an interlocutory appeal from an order granting an extension under section 74.351. *See id.* at 683. Nonetheless, the *Badiga* court held that this ban on inter-locutory appeals does not apply to all orders in which the trial court grants an extension under section 74.351(c). *See id.* at 683–85. And, the *Badiga* court held that the ban does not apply if the trial court erroneously granted an extension to a plaintiff who served "no report" within the Time Period as to the defendant in question. *See id.*

Though the facts of the two cases were different, the *Badiga* court and the *Rivenes* court both concluded that the ban on interlocutory appeals in section 51.014(a)(9) does not apply if the plaintiff served "no report" within the Time Period as to the defendant in question. *See id.; Rivenes,* 257 S.W.3d at 340–41. In sum, if the Claimant served a deficient report as to the Health Care Providers, then this court lacks jurisdiction over their appeals. *See Ogletree,* 262 S.W.3d at 320–21. But this court does have jurisdiction over their appeals to the extent that the Claimant served "no report" as to the Health Care Providers. *See Badiga,* 274 S.W.3d at 683–85; *Rivenes,* 257 S.W.3d at 340–41.

## D. Appellate Jurisdiction as to the Surgeon

■ Dr. Thomas performed the surgery on Ricardo Torrez and, according to the petition and the reports served by the Claimant, Dr. Thomas continued to provide care to Ricardo Torrez after the surgery. In Dr. Leo's report (hereinafter the "Leo Report"), Dr. Leo focuses his attention primarily on the conduct of Drs. Lipsen and Mocharla. Nonetheless, in his report, Dr. Leo makes the following statements:

> [Ricardo Torrez] underwent an attempt at laparoscopic Roux–en–Y gastric bypass by Dr. Clifton Thomas, which had to be converted to an open procedure due to technical factors. Other than the

need for conversion to an open procedure, the operation went well. . . .

On the first post-operative day [November 13, 2007], . . . Dr. Thomas's impression was that [Ricardo Torrez] was doing well. On November 14, 2007, on the second post-operative day, Dr. Thomas noted that [Ricardo Torrez] was complaining of shortness of breath and was anxious without the use of CPAP (continuous positive airway pressure). Dr. Thomas suspected atelectasis (lung collapse) aggravated by a too-tight abdominal binder. His plan was to obtain a chest x-ray and to consult Dr. Lipsen, a nephrologist. The order for chest x-ray was noted at 0940 hours.

. . .

There is no evidence from the medical record [sic] that either Dr. Lipsen or Dr. Thomas ever sought either the report of this chest x-ray or the x-ray films themselves. . .

On November 15, 2007, Dr. Thomas noted that [Ricardo Torrez] was breathing better with a 98% O2 saturation. . . .

On November 16, 2007, Dr. Thomas noted continued improvement in shortness of breath and a O2 saturation of 95%. He found the lungs to be clear, but diagnosed [Ricardo] with persistent atelectasis. . . .

On November 17, 2007, a progress note at 0915 hours noted the presence of chest pain with difficulties taking deep breaths. Lungs were noted to be clear. Dr. Thomas was informed of the shortness of breath, and the note stated that Dr. Thomas "is to follow."

. . .

The standard of care required that the physician assessing Mr. Torrez for his shortness of breath either review the chest x-rays themselves [sic] or, at the least, discuss the findings with the ra-

diologist if a written report was not present on the chart in a timely manner.

. . .

Dr. Lipsen breached the standard of care by failing to apprise himself of the results of Mr. Torrez's chest x-rays obtained on November 14 and November 15. . .

It is my opinion that Dr. Mocharla breached the standard of care in failing to notify Dr. Thomas on November 14 of the finding of a possible pneumothorax. . .

It is my opinion that the breaches of the standard of care enumerated above were directly causative in Mr. Torrez's death. . . .

. . .

Had Dr. Mocharla communicated the suspicion of a pneumothorax directly to either Dr. Thomas or Dr. Lipsen, a CT scan of the chest would have been ordered (assuming that the physician so notified would have acted within the standard of care), and, to a reasonable medical probability, the pneumothorax would have been diagnosed and subsequently treated with a tube thoracostomy, as described above. To a reasonable medical probability, such treatment would have safe [sic] Mr. Torrez's life.

Dr. Leo did not state in his report that he was limiting his opinions to certain defendants. Dr. Leo stated that (1) Dr. Thomas continued to render care to Ricardo Torrez following surgery; (2) a physician assessing Ricardo Torrez for shortness of breath should either review any chest x-ray himself or discuss the findings with the radiologist; and (3) the medical records contain no evidence that Dr. Thomas ever sought either the report of the first chest x-ray or the x-ray films themselves.

In analyzing this jurisdictional issue, we are not reviewing the sufficiency of Dr. Leo's report or the merits of the trial court's denial of Dr. Thomas's motion to dismiss. Instead, we decide only whether Dr. Leo's report was a deficient report or "no report" as to Dr. Thomas. Dr. Leo's report indicates that Dr. Thomas ordered the first chest x-ray,[3] that Dr. Thomas should have reviewed this x-ray himself or talked to the radiologist regarding this x-ray, and that he failed to do so. On this record, we conclude that Dr. Leo's report implicated Dr. Thomas's conduct and that Dr. Leo's report was a "deficient report" as to Dr. Thomas. *See Ogletree,* 262 S.W.3d at 320–21 (concluding that report was "deficient report" and implicated defendant's conduct even though it did not mention defendant's name because it was directed at defendant's care, stated that the procedure should have been performed with fluoroscopic guidance and that plaintiff's injury could have been avoided had the procedure been performed in this manner); *Certified EMS, Inc. v. Potts,* No. 01–10–00106–CV, 2011 WL 286164, at *1–3 (Tex.App.-Houston [1st Dist.] Jan. 27, 2011, no pet. h.) (holding that report in which nursing expert stated that employee engaged in substandard nursing practice and was employed by an unknown temporary nursing agency or service was sufficient to implicate the conduct of the defendant employer so that report was deficient rather than "no report").

Dr. Thomas cites *Apodaca v. Russo,* a case in which the plaintiff appealed from the trial court's granting of the defendant's motion to dismiss under section 74.351(b) and its denial of an extension under section 74.351(c). *See* 228 S.W.3d 252, 254 (Tex. App.-Austin 2007, no pet.). Unlike the case under review, in *Apodaca,* the only report served by the plaintiff did not mention the defendant doctor or any alleged conduct of the defendant doctor. *See id.* at 255–57. The *Apodaca* case is not on point.

Dr. Thomas also cites *Beckwith v. White. See* 285 S.W.3d 56, 62 (Tex.App.-Houston [1st Dist.] 2009, no pet.). Though *Beckwith* did not involve any issue of whether the appellate court had jurisdiction under section 51.014(a)(9), *Beckwith* involved the issue of whether a report implicated a defendant's conduct under section 74.351(a) so as to trigger the requirement that the defendant assert any objections to the sufficiency of the report within twenty-one days of the date the report was served. *See id.* Dr. Thomas argues that *Beckwith* stands for the proposition that, to implicate a defendant's conduct, a report must (1) be directed primarily to the care provided by that defendant, (2) inform the defendant of specific conduct called into question, and (3) provide a basis for the trial court to determine that the claim has merit. *See id.* We construe the *Beckwith* opinion as stating that such a report is sufficient to implicate a defendant's conduct but not necessary to do so. *See id.* If such a report were necessary to implicate a defendant's conduct so as to trigger the exception in section 51.014(a)(9), then many deficient reports would be classified as "no reports," and this exception would be significantly limited, contrary to the Supreme Court of Texas's opinion in *Ogletree. See Ogletree,* 262 S.W.3d at 318–21. We conclude that the *Beckwith* court does not supply a legal standard to be used in determining whether a report falls under the "deficient re-

---

3. In addition, Nurse Beerman states in her report that Dr. Thomas ordered the first chest x-ray.

port" category described in *Ogletree*. *See id.*

■ Dr. Thomas asserts that Dr. Leo does not specify the standard of care for Dr. Thomas. It is true that Dr. Leo never states that a specific standard of care applies to Dr. Thomas; but, Dr. Leo states that "the standard of care required that the physician assessing Mr. Torrez for his shortness of breath either review the chest x-rays themselves [sic] or, at the least, discuss the findings with the radiologist if a written report was not present on the chart in a timely manner." Though this statement is contained in a paragraph addressing Dr. Lipsen's conduct, Dr. Leo states earlier in his report that, in rendering post-operative care, Dr. Thomas noted Ricardo Torrez was complaining of shortness of breath and that there was no evidence from the medical records that Dr. Thomas ever sought either the report of the first chest x-ray or the x-ray films themselves. Dr. Leo's statement of this standard of care can be construed as applying to both Dr. Thomas and Dr. Lipsen for the purposes of determining whether the Claimant served a report as to Dr. Thomas.[4] In any event, the *Ogletree* court did not mention that the report in that case stated a standard of care for Dr. Ogletree, and we conclude that Dr. Leo's report still would be a report as to Dr. Thomas, even presuming that this sentence did not apply to Dr. Thomas and that Dr. Leo stated no standard of care as to Dr. Thomas. *See Ogletree*, 262 S.W.3d at 317–18.

Dr. Thomas also asserts that Dr. Leo was not qualified to provide an opinion regarding the standard of care applicable to Dr. Thomas. Presuming, without deciding, that this is so, the *Ogletree* court held that a report implicated the doctor's conduct and was a deficient report, even though the doctor argued that "no report" was served and that the expert was not qualified to provide an opinion regarding the doctor's standard of care. *See Ogletree*, 262 S.W.3d at 318–19. Therefore, under *Ogletree*, Dr. Thomas's argument lacks merit. *See id.*

Having determined that Dr. Leo's report implicated Dr. Thomas's conduct and that Dr. Leo's report was a "deficient report" as to Dr. Thomas, we conclude that this court lacks jurisdiction over Dr. Thomas's appeal.

## E. Appellate Jurisdiction as to the Physician's Assistant

■ All parties agree that Dr. Whiteman's report does not refer to physician's assistant Lambi or her conduct. The Claimant states in her appellate brief that Dr. Leo's report "was designed to address the negligence of Dr. Lipsen, . . . Dr. Mocharla, . . . , as well as the negligence of Dr. Thomas and Ms. Lambi." But in his report Dr. Leo did not refer to Lambi or to any physician's assistant. Dr. Leo did refer to the following progress note, which the Claimant asserts was made by Lambi:

On November 17, 2007, a progress note at 0915 hours noted the presence of chest pain with difficulties taking deep breaths. Lungs were noted to be clear.

4. Dr. Thomas asserts that the Claimant's counsel conceded at the hearing in the trial court that the reports fail to provide a standard of care as to Dr. Thomas. But, we construe the statement by the Claimant's counsel as conceding that Dr. Leo's report does not expressly mention that a standard of care applies specifically to Dr. Thomas. In

any event, counsel's statement does not rise to the level of a judicial admission. *See Regency Advantage Ltd. P'ship v. Bingo Idea–Watauga, Inc.*, 936 S.W.2d 275, 278 (Tex.1996) (holding that statement was not clear, deliberate, and unequivocal so as to constitute a judicial admission).

Dr. Thomas was informed of the shortness of breath, and the note stated that Dr. Thomas "is to follow."

We presume for the sake of argument that Lambi made this progress note. The Claimant does not assert that there is any other reference to Lambi in Dr. Leo's report.

Nurse Beerman presents herself as a nursing expert, and the Claimant asserts on appeal that Beerman's report "addresses the negligence of the nursing staff at Renaissance Hospital." However, Beerman does refer to Lambi by name, making the following references to Lambi in her report (the "Beerman Report"):

Post-operative day five, November 17, 2007, Mr. Torrez's condition worsened. Mr. Torrez was under the care of Nurse Tsehay Tekeste in ICU. At 0915, Sharon Lambi, PA with Dr. Thomas, noted Mr. Torrez reported he was "doing well, but states he has some chest pain with difficulties taking deep breaths." Ms. Lambi indicated she discussed Mr. Torrez's condition with Dr. Thomas and "he is to follow." Ms. Lambi gave orders for potassium replacement.

In the three reports, the only references to Lambi or her conduct are to a progress note that she made at 9:15 a.m. on November 17, 2007. In this entry, Lambi noted Ricardo Torrez's report of his condition, and stated that she discussed the patient's condition with Dr. Thomas, who "is to follow." Lambi also gave orders for potassium replacement. This is all that is stated regarding Lambi in the three medical reports. The reports contain no statement of a standard of care that can possibly be attributed to Lambi. Though a brief mention is made of care given by Lambi at one point in time, the reports contain no criticism of that care or statement that the care should have been different. The re-

ports contain no statement that any act or omission of Lambi breached a standard of care, constituted negligence, or caused any harm or injury to Ricardo Torrez. Though in her report, Beerman mentions Lambi's name three times, Beerman does so in a passing reference in the "Case Synopsis" section of her report. We conclude that the passing references to one instance of care rendered by Lambi do not implicate the conduct of Lambi. We base this conclusion on the lack of any criticism of Lambi's care, any statement that Lambi violated any standard of care, and any statement that she caused harm to Ricardo Torrez. Indeed, the reports indicate that Lambi communicated to Dr. Thomas the information that the patient reported regarding his condition. On this record, we conclude that, even taking the three reports together, the Claimant served "no report" as to Lambi. *See Rivenes*, 257 S.W.3d at 337–39 (holding that report did not implicate appellant doctor's conduct and was "no report" as to that doctor because the report contained no opinions concerning appellant's conduct and the report did not refer to appellant).

■ The Claimant relies on a pre-*Badiga* case indicating that no appeal can ever be taken under section 54.014(a)(9) if the trial court grants an extension under section 74.351(c). *See McKeever v. Cerny*, 266 S.W.3d 451, 454–55 (Tex.App.-Corpus Christi 2008, no pet.). But this case is contrary to *Badiga*. *See Badiga*, 274 S.W.3d at 683–85. The Supreme Court of Texas has not yet addressed when, if ever, a defendant may appeal from an order denying a motion to dismiss if the trial court granted an extension to a plaintiff who served a report within the Time Period but the defendant asserted that the report was "no report" as the appealing

defendant.[5] *See In re Watkins,* 279 S.W.3d 633, 633–34 (Tex.2009); *id.* at 636–39 (Willett, J., concurring). Though the high court has not yet addressed this fact pattern, this court did so in *Rivenes,* a precedent by which we are bound. *See Rivenes,* 257 S.W.3d. at 338, 340–41. Therefore, we cannot follow cases from other courts of appeals contrary to *Rivenes. See, e.g., Scoresby v. Santillan,* 287 S.W.3d 319, 324 (Tex.App.-Fort Worth 2009, pet. granted) (concluding that "no report" category in *Badiga* only includes instances in which no document purporting to be a report was served within the Time Period). We follow this court's precedent.

Because the three reports that the Claimant served are "no report" rather than a deficient report as to Lambi, this court has appellate jurisdiction over Lambi's appeal from the trial court's denial of her motion to dismiss. *See Badiga,* 274 S.W.3d at 683–85; *Rivenes,* 257 S.W.3d. at 339–41. Because the three reports are "no report" as to Lambi, the trial court abused its discretion by denying Lambi's motion to dismiss under section 74.351(b). *See Rivenes,* 257 S.W.3d. at 339–41. Accordingly, we sustain the appellate issue as to Lambi.

## III. Conclusion

As to Dr. Thomas, the Claimant served a deficient report within the Time Period and therefore there is no appellate jurisdiction under section 51.014(a)(9). For this reason, we dismiss Dr. Thomas's appeal for lack of jurisdiction. As to Lambi's appeal, the three reports that the Claimant served are "no report" rather than a deficient report. Therefore, this court has appellate jurisdiction, and we hold that the trial court abused its discretion by denying Lambi's motion to dismiss under section

---

**5.** The Supreme Court of Texas may address this issue when it issues its opinion in *Scores-*

74.351(b). Accordingly, we reverse the trial court's order as to Lambi, and remand to the trial court with instructions to dismiss the claims against Lambi and award her reasonable attorney's fees and costs of court under section 74.351(b).

*by v. Santillan,* which has been submitted in cause number 09–0497 in that court.