

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## NUMBER 13-15-00170-CV

DIAGNOSTIC HEALTHCARE SERVICES D/B/A
ONSITE BALANCE SOLUTIONS, LLC,                       Appellant,

v.

DIANNE JACKSON,                                              Appellee.

## NUMBER 13-15-00171-CV

P. PALIVELA RAJU, M.D.,                                     Appellant,

v.

DIANNE JACKSON,                                              Appellee.

On appeal from the 23rd District Court
of Matagorda County, Texas.

## MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Longoria**
**Memorandum Opinion by Justice Rodriguez**

Appellants, Diagnostic Healthcare Services, d/b/a Onsite Balance Solutions, LLC, (OBS) and P. Palivela Raju, M.D., appeal the trial court's orders denying their motions to dismiss appellee Dianne Jackson's claims pursuant to section 74.351 of the Texas Civil Practice and Remedies Code for failure to file an expert report in good faith.[1]  TEX. CIV. PRAC. & REM. CODE ANN. § 74.351 (West, Westlaw through Ch. 46, 2015 R.S.).  We affirm.

## I. BACKGROUND

Jackson saw Dr. Raju, an ear, nose, and throat specialist, complaining of vertigo. On March 28, 2012, Jackson underwent balance testing at Dr. Raju's office, which Dr. Raju scheduled with OBS, a third-party, non-physician, medical service provider.  OBS employee Danny Hertzer seated Jackson in a chair to perform a "caloric stimulation" test.[2] After that test was completed but before Jackson began the vertigo test, Jackson fell backwards in the chair and allegedly suffered injury to her knee and shoulder.  Though the testing took place at Dr. Raju's office, neither Dr. Raju nor any member of his staff was present during the testing or when Jackson fell.

Jackson sued OBS and Dr. Raju under Chapter 74 of the civil practice and

---

[1] Appellants filed separate appeals.  However, because they involve the same underlying facts and issues, we address Cause No. 13-15-00170-CV and No. 13-15-00171-CV in one memorandum opinion.

[2] According to Jackson, a "caloric stimulation" test stimulates the acoustic nerve by delivering cold or warm water or air into the ear canal.

remedies code.[3]   In support of her claims, Jackson attached to her original petition an expert report and curriculum vitae from orthopedic surgeon Arnold Ravdel, M.D.   Dr. Ravdel opined that Dr. Raju was required to ensure that all medical equipment was properly maintained, in working order, and that his patients were supervised at all times, either by himself or his staff, when medical tests are being performed.   Dr. Ravdel further opined that the chair from which Jackson fell was poorly maintained and/or malfunctioning and noted that Dr. Raju did not supervise OBS's testing.   Though Dr. Ravdel's report referenced OBS in passing, the report addressed neither the standard of care applicable to OBS nor any breach of that standard.

Dr. Raju timely objected to Dr. Ravdel's report.   Jackson did not file an amended report, and Dr. Raju subsequently filed a motion to dismiss Jackson's lawsuit against him. OBS did not object to Dr. Ravdel's report and instead filed a motion to dismiss Jackson's lawsuit against it.   The trial court denied appellants' motions to dismiss.   This appeal followed.

## II.     APPLICABILITY OF THE TEXAS MEDICAL LIABILITY ACT

As a preliminary matter, Jackson contends that her claims are not claims of professional negligence such that they are subject to the expert report requirements found in section 74.351(a) of the civil practice and remedies code.    *See id.* § 74.351(a). Specifically, Jackson pled claims for general negligence and premises liability against appellants that she maintains are the appropriate causes of action going forward.

Because we must determine the applicability of the Texas Medical Liability Act

---

[3] By amended petition Jackson also alleged claims for general negligence and premises liability.

3

(TMLA) to Jackson's claims, which is a question of law, we apply a de novo standard of review. *See Tex. W. Oaks Hosp., LP v. Williams,* 371 S.W.3d 171, 177 (Tex. 2012). The TMLA defines the procedural requirements for bringing a health care liability claim (HCLC) in Texas and is codified under Chapter 74 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001, et. seq. (West, Westlaw through Ch. 46, 2015 R.S.). A claim is an HCLC when it is:

> A cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

*Id.* § 74.0001(a)(13). Whether a case is an HCLC is determined by the nature of the acts or omissions causing the alleged injuries. *See Williams,* 371 S.W.3d at 176. The statutory requirements of the TMLA cannot be circumvented by artful pleading. *Harris Methodist Fort Worth v. Ollie,* 342 S.W.3d 525, 527 (Tex. 2011). "An HCLC contains three basic elements: (1) a physician or health care provider must be a defendant; (2) the claim or claims at issue must concern treatment, lack of treatment, or a departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care; and (3) the defendant's act or omission complained of must proximately cause the injury to the claimant." *Williams,* 371 S.W.3d at 179–80.

The TMLA sets out several types of HCLCs: in addition to claims involving treatment and lack of treatment, the Act contemplates claims for alleged "departure[s] from . . . safety . . . ." *Id.* at 180 (citing TEX. CIV. PRAC. & REM. CODE § 74.001(a)(13)).

4

"[S]afety, undefined in the statute, is commonly understood to mean protection from danger and that the 'specific source of that danger . . . is without limitation.'" *Id.* at 185. Therefore, the safety component of HCLCs need not be directly related to the provision of health care. *Id.* at 186 (recognizing that construing the statute to give safety its "common meaning" encompasses premises liability claims). However, we do look to the nature of the alleged "acts or omissions" to distinguish an HCLC from a claim or ordinary negligence—at a minimum, "there must be a substantive nexus between the safety standards allegedly violated and the provision of healthcare" that constitutes more than a "but for" relationship. *Ross v. St. Luke's Episcopal Hosp.,* 462 S.W.3d 492, 503–04 (Tex. 2015); *see Methodist Health Care Sys. of San Antonio, Ltd., v. Dewey,* 423 S.W.3d 516, 519 (Tex. App.—San Antonio 2014, pet. denied) (interpreting *Williams* narrowly to govern cases that involve safety claims that are indirectly related to healthcare).

Jackson's claims meet the three basic requirements for an HCLC: (1) she sued her physician, Dr. Raju, and her non-physician health care provider, OBS; (2) the claims involve an alleged departure from accepted standards of safety; and (3) Jackson's pleadings allege that the acts and/or omissions of appellants proximately caused her injuries. *See Williams,* 371 S.W.3d at 179–80. Jackson's claims occurred while undergoing testing for vertigo. The testing was recommended by her treating physician, scheduled by her physician, and took place in his office. During her testing, the balance chair, a medical device used in the testing, allegedly broke causing Jackson's fall. Jackson's claims are, at the very least, indirectly related to healthcare. *See Ross*, 462 S.W.3d at 503–04; *Dewey,* 423 S.W.3d at 519. Therefore, we determine that Jackson's

5

claims that appellants failed to maintain the balance testing chair in a proper condition and failed to adequately supervise the balance testing are HCLCs and are subject to the requirements of the TMLA. *See Williams,* 371 S.W.3d at 185–86.

### III. STANDARD OF REVIEW

We review a trial court's denial of a motion to dismiss a claimant's cause of action under the TMLA for an abuse of discretion. *Jelinek,* 328 S.W.3d at 539. A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex. 1985).

### IV. "NO REPORT" OR "DEFICIENT REPORT" AS TO OBS

By its first three issues, OBS contends Jackson's expert report constituted "no report" as to OBS and, thus, the trial court abused its discretion when denied OBS's motion to dismiss. Specifically, OBS argues that the report filed by Jackson failed to (1) primarily implicate OBS, (2) failed to set forth any breach of the standard of care or causation analysis as to OBS, and (3) failed to provide any explanation of how different care by OBS would have prevented the alleged injuries.

#### A. Applicable Law

The Texas Civil Practice and Remedies Code provides that "within 120 days of suit, a plaintiff must serve expert reports for each physician or health care provider against whom a liability claim is asserted." *Ogletree v. Matthews,* 262 S.W.3d 316, 319 (Tex. 2007) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a)). If a plaintiff does not file a timely report, "a trial court 'shall' grant the defendant's motion to dismiss the case with

6

prejudice." *Id.* "But if a report is served, each defendant physician or health care provider whose conduct is implicated must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived." *Id.* (internal quotations omitted). A defendant is only required to object to the sufficiency of the report if implicated therein—otherwise, there is no report filed as to that defendant and a motion to dismiss is appropriate. *E.g., Thomas v. Torrez,* 362 S.W.3d 669, 672 (Tex. App.—Houston [14th Dist.] 2011, pet. dism'd).

The Texas Supreme Court has held that to qualify as a report pursuant to section 74.351(a), the expert report need only (1) be served by the statutory deadline, (2) contain the opinion of an individual with expertise that the claim has merit, and (3) implicate the defendant's conduct. *Scoresby v. Santillan,* 346 S.W.3d 546, 557 (Tex. 2011); *Laredo Tex. Hosp. Co., L.P. v. Gonzalez,* 363 S.W.3d 255, 257 (Tex. App.—San Antonio 2012, no pet.). It is recognized that a claimant can fail to serve an expert report as to a defendant when "a claimant serves a report in an attempt to satisfy all the requirements for an expert report" as to other defendants, but the report does not implicate the conduct of the defendant in question. *Thomas,* 362 S.W.3d at 672 (concluding that multiple passing references to a named defendant in an expert report were not sufficient to implicate that defendant and it was "no report" as to her); *see also Bogar v. Esparza,* 257 S.W.3d 354, 364–69, 373 (Tex. App.—Austin 2008, no pet.); *Rivens v. Holden,* 257 S.W.3d 332, 338–39 (Tex. App.—Houston [1st Dist.] 2008, pet denied); *Apodaca v. Ruso,* 228 S.W.3d 252, 255–58 (Tex. App.—Austin 2007, no pet).

Analyzing the third *Scoresby* factor, a report does not "implicate" a particular health

care provider's conduct merely because the provider is a defendant in the lawsuit. *See Scoresby,* 346, S.W.3d at 557; *Ogletree,* 262 S.W.3d at 322–23; *see also Thomas,* 362 S.W.3d at 672; *Bogar,* 257 S.W.3d at 373; *Rivenes,* 257 S.W.3d at 338–39; *Apodaca,* 228 S.W.3d at 255–58. The term "implicated" is not defined in Chapter 74. Section 74.001 provides that, "[a]ny legal term or word of art used in this chapter, not otherwise defined in this chapter, shall have such meaning as consistent with the common law." TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(b). The term "implicate" is defined in common usage as "[t]o show (a person) to be involved in." *Beckwith v. White,* 285 S.W.3d 56, 62 (Tex. App.—Houston [1st Dist.] 2009, no pet). "Although somewhat loosely defined at common law, a defendant's conduct is implicated when an expert report is 'directed primarily' to care provided by the defendant, and the report informs the defendant of specific conduct called into question and provides a basis for the trial court to determine that the claim has merit." *Id.* (internal citations omitted) (citing *Ogletree*, 262 S.W.3d at 318 (Tex. 2007); *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 876–80 (Tex. 2001)); *see also Thomas,* 362 S.W.3d at 672. If a report does not implicate the conduct of each defendant, then it fails the three prong test set forth in *Scoresby,* and is "no report," as to the "un-implicated" defendant, thereby mandating dismissal in that defendant's favor. *See Scoresby,* 346 S.W.3d at 556–57; *Thomas,* 362 S.W.3d at 672.

We look only to the four corners of the expert's report and curriculum vitae in deciding whether the statutory standard has been met. *See Mem'l Hermann Healthcare Sys. v. Burrell,* 230 S.W.3d 755, 758 (Tex. App.—Houston [14th Dist.] 2007, no pet.);

8

*Apodaca,* 228 S.W.3d at 257 (noting that when reviewing whether an expert report complies with the statutory requirements, appellate courts may only consider the four corners of the report itself).

**B.      Discussion**

Jackson filed Dr. Ravdel's written report within the 120-day window provided by statute.   *See* TEX. CIV. PRAC. & REM CODE ANN. § 74.351(a).   Therefore, if Dr. Ravdel's report satisfies the three-prong *Scoresby* test and merely contains curable deficiencies, then OBS waived any objection to the report by failing to object within twenty-one days. *See id.; Scoresby,* 346 S.W.3d at 557.   However, if Dr. Ravdel's report did not satisfy the *Scoresby* test, then the report is "no report," and the trial court abused its discretion by denying OBS's motion to dismiss.   *See* TEX. CIV. PRAC. & REM CODE ANN. § 74.351(a); *Scoresby,* 346 S.W.3d at 557; *Laredo Tex. Hosp.,* 363 S.W.3d at 258–59.

We review the four corners of Dr. Ravdel's expert report and curriculum vitae to determine whether the report satisfied the *Scoresby* test.   *See Burrell*, 230 S.W.3d at 758.    OBS does not challenge Dr. Ravdel's report on the first two prongs; instead, OBS contends that Dr. Ravdel's report fails to implicate the conduct of OBS and thus fails the third prong.   *See* TEX. CIV. PRAC. & REM CODE ANN. § 74.351(a); *Scoresby,* 346 S.W.3d at 557; *Laredo Tex. Hosp.,* 363 S.W.3d at 258–59.

Though Dr. Ravdel's report was clearly critical of Dr. Raju, it was less specific regarding OBS.   We reproduce Dr. Ravdel's report in relevant part.

> I have reviewed the medical records in this case and conferred with you about the injuries sustained to Ms. Dianne Jackson on or about March 28th, 2012, when she was injured on the premises of Dr. P.P Raju's medical practice, when Onsite Balance Solutions administered a vertigo test using

a medical chair that was not properly maintained.

The test was conducted by staff from Onsite Balance Solutions on Dr. Raju's premises. The patient was placed in a rotating chair and was not supervised by staff from Dr. Raju's office after being placed in the chair. Instead, the supervision was provided by Onsite Balance Solutions, hired by Dr. Raju's Office to administer the test. The chair improperly rolled after Ms. Jackson was seated in it, causing the patient to fall out of the chair and sustain an injury to her left knee and shoulder. Subsequent to her fall, the patient was treated for both injuries. Although she had existing problems to her knee prior to the fall her knee was asymptomatic prior to the fall on March 28, 2012. As a result of the injury to her left shoulder joint and left knee, patient required surgery to repair the damage.

. . . .

This report is to detail my findings and conclusions based on the medical records reviewed. All of the opinions expressed in this report are within reasonable medical probability and based on my education, training and experience as a surgeon and physician, including particularly my experience and knowledge about orthopedic injuries, complications and surgery. After reviewing the medical records and information in this case, including medical records from Brazoria County Surgical Center, Brazosport Regional, Dr. Feaver, Dr. Hoffman, Dr. Raju, and Rehabilitation and Wellness Center, in all reasonable medical probability, the torn medical and lateral menisci found in the left knee joint, and the partial thickness rotator cuff tear, with labral, glenoid tear, is a direct result of the fall on March 28th, 2012, when Plaintiff was seated in what appears to be a poorly maintained or malfunctioning chair in the control of Dr. Raju and operated by Onsite Balance Solutions.

The standards of care that apply to this case are as follows:

**Physician**: Dr. Raju, as the owner and sole physician at medical practice located at 1410 Avenue F, Bay City, Texas 77414 is required to ensure that all medical equipment is properly maintained, in working order, and that his patients are supervised by himself or qualified medical staff at all times when medical tests are being performed. On March 28, 2012, Ms. Jackson was seated in a poorly maintained and/or malfunctioning medical chair used to test for vertigo. During the test, conducted by Onsite Balance Solutions, neither Dr. Raju nor his office staff were present when Onsite Balance Solutions performed the medical testing which lead to Ms. Jackson's fall.

10

**Nursing Staff**: Nursing staff should ensure that all medical devices under their care and/or control are in proper operating order. Here, not only did the nursing staff fail to ensure that the medical device used to test Ms. Jackson for vertigo was functioning properly, but they failed to supervise its operation when the test was conducted by staff from Onsite Balance Solutions.

While the determination of whether or not Dr. Ravdel's report implicated OBS is a close call in this case, we cannot say that the trial court acted arbitrarily or without reference to any guiding rules or principles when it denied OBS's motion to dismiss.[4] *See Scoresby,* 346 S.W.3d at 557. According to *Scoresby,* Jackson was required to serve an expert report implicating *each* defendant pursuant to the TMLA—we determine it did. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (r)(6); *Scoresby,* 346 S.W.3d at 557. Dr. Ravdel's report states that OBS "administered a vertigo test using a medical chair that was not properly maintained," and later states that Jackson's injuries resulted because she was seated in a poorly maintained or malfunctioning chair "operated" by OBS. This language includes more than a "passing mention" of OBS's activities, informs OBS of specific conduct called into question, and provides a basis for the trial court to determine if Jackson's claim has merit. *See Beckwith,* 285 S.W.3d at 62; *see also Thomas,* 362 S.W.3d at 672. Although OBS was not included in the applicable "standard of care" section, Dr. Ravdel's report mentioned OBS a total of seven times and clearly stated that OBS conducted, administered, and supervised the testing that led to Jackson's fall. The report filed by Jackson did not comply with the statutory requirements of section

---

[4] In denying OBS's motion to dismiss, the trial court order stated that OBS's failure to object to Dr. Ravdel's report within the twenty-one day window waived its complaints, impliedly finding that Dr. Ravdel's report did not constitute "no report" as to OBS.

11

74.351(r)(6) as to OBS—but it does constitute a report.   We conclude that Dr. Ravdel's report implicates OBS and therefore satisfies the third prong of the *Scoresby* test.   *See Scoresby,* 346 S.W.3d at 557.   The trial court therefore did not abuse its discretion when it denied OBS's motion to dismiss.

We overrule OBS's first issue.   We do not reach its second and third issues on appeal because OBS waived any complaint to the sufficiency of the report when it failed to object within twenty-one days as required by section 74.351(a).   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), TEX. R. APP. P. 47.1.

## V.   GOOD FAITH REPORT AS TO DR. RAJU

Dr. Raju, by four issues, contends the trial court abused its discretion when it denied his motion to dismiss Jackson's HCLC against him for failing to file a good faith report as required by statute.   Specifically, he contends that Dr. Ravdel is not qualified to render opinions regarding balance testing for vertigo and that Dr. Ravdel's report failed to meet the statutory requirements because it was conclusory and based on mere assumptions.   Dr. Raju does not contend, as did OBS, that Dr. Ravdel's report was "no report," but instead asks this Court to determine that the report was deficient and not made in good faith.

### A.   Applicable Law

As set out earlier, under the unambiguous language of section 74.351, a claimant satisfies the "expert report" requirement as to a defendant only by properly serving, within the 120-day time period, a report or reports that satisfy all the requirements for an "expert report" as to that defendant.   *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (b), (i),

12

(r)(6).

Section 74.401 sets forth the statutory expert qualifications necessary to render an opinion against a physician under the TMLA. *See id* § 74.401. In order to qualify as an expert witness on the issue of whether a physician departed from accepted standards of medical care, the expert must be currently practicing medicine with knowledge of the accepted standards for the diagnosis, care, or treatment of the condition involved in the claim, and be qualified on the basis of training or experience to offer an expert opinion regarding those accepted standards of medical care. *Id.* at § 74.401(a)(1)–(3).

Trial courts must ensure that the purported expert actually has expertise concerning the subject matter of their opinion. *See Gammill v. Jack Williams Chevrolet, Inc.,* 972 S.W.2d 713, 719 (Tex. 1998). Every licensed medical doctor is not automatically qualified to testify as an expert on every medical question. *See Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996). The expert's knowledge or training must fit the subject matter at issue. *See id.*

If the expert is qualified, the TMLA further dictates that the expert report include the following content:

> A fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). Failure to include the above content renders an expert report deficient. *Ogletree,* 371 S.W.3d at 180. However, when an expert report is challenged, the trial court may deny a motion to dismiss when the report

13

represents an objective good faith effort to comply with the definition of an expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(l); *Samlowski v. Wooten,* 332 S.W.3d 404, 409 (Tex. 2011). The Texas Supreme Court has explained "that a 'good faith effort' in this context simply means a report that does not contain a material deficiency. Therefore, an expert report that includes all the required elements, and that explains their connection to the defendant's conduct in a non-conclusory fashion, is a good faith effort." *Samlowski,* 332 S.W.3d at 409–10 (internal citations omitted). In contrast, a conclusory report or one that omits an element is not a good faith effort. *Id.* at 410 (citing *Palacios*, 46 S.W.3d at 879). A report need not marshal all of the plaintiff's proof, but must include the expert's opinion on the standard of care, breach, and causal relationship. *See Bowie Mem. Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002).

## B. Dr. Ravdel's Qualifications

Dr. Ravel served both his report and curriculum vitae on Dr. Raju. We look to the four corners of those documents to determine if Dr. Ravdel is qualified to provide an expert opinion in this case. *See Burrell,* 230 S.W.3d at 758. Dr. Ravdel is a board certified orthopedic surgeon and has been practicing medicine for over forty years. It is Dr. Raju's position that Dr. Ravdel, as an orthopedic surgeon, is not qualified to provide expert opinions on issues pertaining to vertigo and balance testing; he argues that Dr. Ravdel's report and curriculum vitae do not indicate that he has any training or experience either providing or supervising balance tests in the evaluation of vertigo symptoms or the maintenance of balance chairs used for such testing. In support of his position, Dr. Raju has cited numerous cases in which physicians were prevented from providing expert

14

opinions outside of their specific areas of expertise. *See Hansen v. Starr,* 123 S.W.3d 13, 19 (Tex. App.—Dallas 2003, pet. denied) (finding that a doctor, board certified in internal medicine, cardiology, and interventional cardiology, not qualified to provide an expert opinion in the area of radiology based on the four corners of his report and curriculum vitae); *Chisholm v. Maron,* 63 S.W.3d 903, 907 (Tex. App.—Amarillo 2001, no pet.) (finding that a doctor was not qualified to provide an expert opinion regarding orthopedic surgery based on his publication of medical articles); *Clark v. HCA, Inc.,* 210 S.W.3d 1, 7–8 (Tex. App.—El Paso 2005, no pet) (finding that the trial court did not abuse its discretion when it found the plaintiff's expert was not qualified because the record did not indicate the doctor's current role in the relevant field or his experience with the anticoagulation therapy at issue); *In re Samonte,* 163 S.W.3d 229, 237 (Tex. App.—El Paso 2005, orig. proceeding) (noting that a report that failed to provide the expert's qualifications was not sufficient to "establish that the ostensible expert is qualified to render an opinion on the acceptable standards of care at issue").

We determine, however, that the claims in this case are not specific to any area of the practice of medicine, but instead address the general standard of care any medical physician owes patients to properly maintain medical equipment and supervise medical testing. We again note that this HCLC does not allege that Dr. Raju is liable for a departure from accepted standards of medical care, or health care, but we instead construe it as a claim that Dr. Raju departed from accepted standards of safety. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(13). As such, it is an understanding of the standard of care regarding the proper maintenance of medical equipment at a physician's

15

office and the standard of care involving the supervision of patient testing at a physician's office that is the relevant to our analysis. *See, e.g., Palafox v. Silvey,* 247 S.W.3d 310, 315, 319 (Tex. App.—El Paso 2007, no pet.) (noting that a doctor in a different field was qualified to provide an expert report on the standard of care involved in charting the dietary needs of elderly patients when the alleged injury involved an elderly patient who choked after being placed on a regular diet at the hospital). Dr. Ravdel's curriculum vitae shows that he has been a private practitioner since 1970 and as such can address the duties related to the safety of a patient that a private practitioner owes patients while present at the office for medical services in this limited context. We conclude Dr. Ravdel is qualified to provide an expert report regarding those topics. *See Gammill,* 972 S.W.2d at 719; *Palafox,* 247 S.W.3d at 319.

We overrule Dr. Raju's first issue.

## C. "Good Faith Effort" in Expert Report

By his second, third, and fourth issues, Dr. Raju asserts that Dr. Ravdel's report failed to provide a fair summary of the standard of care and provided conclusory opinions as to the standard of care and causation, contrary to section 74.351(r)(6). Specifically, Dr. Raju contends that the vague and general statements of the standard of care and causation did not constitute a good faith effort to comply with the expert report requirement.

The issues involved in this "safety" HCLC are unique from other claims under the TMLA because they do not criticize Dr. Raju's medical assessment or treatment of Jackson, rather they essentially involve claims that Dr. Raju departed from standards of

16

safety by failing to provide a safe environment for his patient's treatment and evaluation. With that as our basis, we review Dr. Ravdel's report pursuant to section 74.351(r)(6) to determine whether it contains the statutorily required elements under the TMLA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6).

Dr. Ravdel identified the applicable standard of care when he stated that Dr. Raju, as the owner and sole physician at his medical practice, was required to ensure that all medical equipment is properly maintained, in working order, and that his patients are supervised either by himself or his staff at all times while medical tests are being performed. Dr. Ravdel went on to state that the balance chair Jackson was seated in for balance testing was poorly maintained and/or malfunctioning and that neither Dr. Raju nor any member of his staff was present during the medical testing, implicitly setting forth the manner in which the care rendered by Dr. Raju was inadequate and in breach of the standard of care. Finally, Dr. Ravdel's report stated that the balance chair "improperly rolled," causing Jackson to fall and injure her shoulder and knee, which provided the causal relationship between Dr. Raju's failure to meet the standard of care and Jackson's alleged injuries. The mechanism of injury in this case is "simplistic"—Dr. Ravdel's expert report was not required to complicate an otherwise straightforward issue.

We determine that Jackson made an "objective good faith effort" to comply with the definition of an expert report in section 74.351(r)(6), that his report set out an appropriate standard of care, adequately addressed causation, and that the trial court did not abuse its discretion in denying Dr. Raju's motion to dismiss. *See id.* § 74.351(l), (r)(6); *Samlowski,* 332 S.W.3d at 409–10.

17

We overrule Dr. Raju's second, third, and fourth issues.

## VI. CONCLUSION

We affirm the trial court's orders denying appellants' motions to dismiss.


NELDA V. RODRIGUEZ
Justice

Delivered and filed the
31st day of August, 2015.

18